# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### September 5, 2012 Session

## M. JOSIAH HOOVER, III v. BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

### Direct Appeal from the Chancery Court for Knox County
No. 1797253    Donald Harris, Senior Judge

---

### No. E2011-02458-SC-R3-BP - Filed November 16, 2012

---

This is an appeal from a judgment affirming the disbarment of an attorney. After considering evidence presented incident to five complaints against the attorney, a hearing panel designated by the Board of Professional Responsibility concluded that disbarment was warranted. On appeal, the trial court affirmed. In this appeal, the attorney has raised the following issues for review: (1) whether the panel erred by denying his motion to continue the hearing; (2) whether the panel erred by considering the attorney's conduct in a case based upon a complaint by another attorney who had no involvement in the case; (3) whether the evidence supports the panel's findings; (4) whether disbarment is an appropriate punishment; and (5) whether the trial court erred by denying the attorney's post-judgment motion to supplement the record. We affirm the judgment.

### Tenn. Sup. Ct. R. 9, § 1.3 Direct Appeal; Judgment of the Trial Court Affirmed

GARY R. WADE, C.J., delivered the opinion of the Court, in which JANICE M. HOLDER, CORNELIA A. CLARK, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

M. Josiah Hoover, III, Knoxville, Tennessee, pro se.

Sandy Garrett, Senior Litigation Counsel, for the appellee, Board of Professional Responsibility of the Supreme Court of Tennessee.

## OPINION
### I.  Facts and Procedural Background

On July 22, 2010, the Board of Professional Responsibility ("BPR") filed a petition for discipline against M. Josiah Hoover, III, who has been licensed to practice law in this state since 1981. The petition contained allegations of five instances of misconduct by the following complainants: Norman Whitton, Ronald and Deborah Titus, and Wayne LeQuire,

all of whom were former clients of Hoover, and attorney Roy Neuenschwander. After Hoover responded to the petition, a hearing panel ("Panel") scheduled the matter to be heard on December 8, 2010.

Two days before the hearing, Hoover filed a motion to continue, contending that both he and the BPR had served discovery requests less than thirty days prior to the hearing and that the time for responses would not expire until after the hearing date. Because the BPR had subpoenaed several witnesses and was prepared to proceed without responses to its discovery requests, it opposed the motion. The Panel denied the request for a continuance and proceeded with the hearing as scheduled.[1] During the hearing the parties adduced the following evidence concerning the complaints against Hoover.

According to Hoover's testimony and court records presented by the BPR, the first complainant, Norman Whitton, hired him in January of 2007 to file a proof of claim in the bankruptcy proceeding of a judgment debtor. Whitton paid Hoover $1000 for his representation, and Hoover, without ascertaining the status of the bankruptcy beforehand, filed a proof of claim. Afterward, Whitton discovered that the debtor had been discharged from bankruptcy a month before the claim was filed. When he informed Hoover of the discharge and asked for a refund of the advance fee, Hoover refused to return the $1000. Proceeding pro se, Whitton filed suit against Hoover in the General Sessions Court for Loudon County, alleging legal malpractice and breach of contract. He obtained a $1000 judgment. When Hoover appealed, the circuit court affirmed the judgment, finding that the contract was unconscionable. On further appeal, the Court of Appeals concluded that the contract did not qualify as unconscionable and modified the judgment to $500. Whitton v. Hoover, 313 S.W.3d 262, 265 (Tenn. Ct. App. 2009). On December 7, 2010, one day prior to the hearing before the Panel, Hoover paid $100 of the $500 judgment. As of the date of the hearing, the balance remained unpaid.

Ronald and Deborah Titus employed Hoover to file a suit for breach of warranty in the Circuit Court for Blount County. Hoover admitted that when the court granted summary judgment denying recovery, he filed a notice of appeal but failed to follow up with a timely brief. On January 11, 2008, the Court of Appeals ordered Hoover to either file a brief within ten days or show cause why the appeal should not be dismissed. Upon request, the Court of Appeals granted Hoover an extension of time for filing until February 25, 2008. Ten days before the due date, Hoover wrote a letter to the Tituses, informing them that he would "have the brief written on or before February 28, 2008." Hoover did not file the required appellate

_____

[1] Hoover initially failed to appear at the hearing, which was scheduled for 9:00 a.m. Following a brief delay, the Panel commenced the hearing in Hoover's absence. When he arrived forty minutes late, the Panel delayed the proceedings for his benefit in order to summarize what had occurred prior to his arrival.

brief until February 29, 2008, at which time he also filed a motion asking the Court of Appeals to accept a late transcript submitted contemporaneously with the brief. On March 12, 2008, the Court of Appeals denied the motion and dismissed the appeal for failure to file a timely brief and failure to comply with the previous orders. Hoover filed a petition for rehearing on April 14, 2008, which was denied as untimely. Deborah Titus testified that she and her husband, who had paid Hoover over $13,000 in attorney's fees, learned from the Appellate Court Clerk's Office rather than Hoover that their appeal had been dismissed.

Wayne LeQuire testified that he retained Hoover in September of 2008 to represent him in a divorce. LeQuire's wife had initiated the proceedings. Because Hoover emphasized that an answer to the divorce complaint had to be filed by Monday, September 15, 2008, he informed LeQuire that he would be required to arrange a consultation over the weekend before the deadline, for which he "was going to charge . . . a little extra." LeQuire met with Hoover over that weekend and paid him $3500; however, when he attempted to contact Hoover by telephone on September 15th, he was unsuccessful. Although Hoover had assured LeQuire that he would file his answer on September 15th, he did not do so until two days later.

Following the filing of the answer, Hoover scheduled a discovery deposition of LeQuire's wife and arranged for a meeting with LeQuire in order to properly prepare. LeQuire averred that despite repeated attempts, he was unable to make contact with Hoover until the day before the scheduled deposition. At that time, Hoover told LeQuire to meet him on the following morning. When LeQuire telephoned Hoover the next morning, he was again unable to make contact. Hoover returned the call at approximately 10:30 a.m. and instructed LeQuire to meet him at noon—one hour before the 1:00 p.m. deposition—in the parking lot of the building where the deposition was to be taken. LeQuire arrived at the appropriate time. Hoover did not arrive until approximately 1:20 p.m. Because Hoover had nothing but a pen and notepad, LeQuire was required to provide Hoover with materials he kept in his own case file.

Because of the lack of preparation, LeQuire informed Hoover that he was uncomfortable with going forward with the deposition at that time. Hoover, however, persuaded him to proceed. In consequence, the deposition went "as bad as one can possibly go," according to LeQuire, who claimed that Hoover posed a number of questions that did not make sense in the context of the case. Eventually, LeQuire, who perceived that he had been "backed into a corner," requested a recess, presented a settlement offer directly to opposing counsel in excess of what he had initially planned, and settled the case.

Attorney Roy Neuenschwander complained about the conduct of Hoover in Edwards v. Powers, No. 2:00-0775, 2003 WL 25674812 (S.D.W. Va. June 5, 2003) and in Hoover v.

Disney, No. L-16572 (Cir. Ct. May 26, 2010). Hoover brought the Edwards case in the United States District Court for the Southern District of West Virginia, asserting claims for injuries suffered by a deceased prisoner and on behalf of his surviving spouse as a result of civil rights violations. In an order issued on June 5, 2003, the district court enumerated twelve instances of misconduct by Hoover as a result of his failure to comply with court orders, various provisions of the Federal Rules of Civil Procedure, and the local rules of the district. Edwards, 2003 WL 25674812, at *1-3. Among other things, the district court found that Hoover had neglected to make several required discovery disclosures, had failed to comply with multiple scheduling deadlines, had repeatedly filed untimely responses, and had filed a "frivolous and vexatious" motion for sanctions against opposing counsel. In addition, after being cautioned that any further violation of a court order would result in sanctions or criminal contempt, Hoover violated an order requiring him to provide opposing counsel certain documents by a specified time. Id. The district court further made the following observation:

> The court repeatedly has warned [Hoover] that he would be personally sanctioned if he continued to fail to comply with the discovery requests and orders of this court. Accordingly, the court **FINDS** that it has given [Hoover] more than sufficient notice of his alleged misconduct and the consequences of that misconduct. As stated in the show cause hearing, the court **FINDS** that Hoover has repeatedly violated the orders of this court, the local rules, and the *Federal Rules of Civil Procedure*. Although Mr. Hoover proffers that he did not "*intend* to hinder or delay" litigation and that he has "done the best [he] could" in this complex case, the court **FINDS** that these excuses are not credible and that Mr. Hoover's numerous violations of the rules *were* in fact made in bad faith and with the intent to delay.

Id. at *4.

Based on these findings, the district court imposed a monetary sanction in the amount of $12,649.58, as reasonable attorney's fees incurred by the opposing party as a result of Hoover's improper conduct. Id. Noting the "flagrant" nature of the conduct, the district court also ordered that Hoover be fined $1000 per week for every week after the payment deadline, if the amount had not been paid in full. Id. Further, citing Hoover's "absolute disregard for the practices and procedures of [the] court," the district court ordered that his pro hac vice status be revoked and that "he never again be allowed to practice before the United States District Court for the Southern District of West Virginia following the conclusion of matters in [the Edwards case]." Id.

-4-

The State of West Virginia successfully petitioned for the domestication of the judgment in the Chancery Court for Knox County. Following an unsuccessful motion to alter or amend the judgment of the Chancery Court, Hoover attempted to appeal. Because the notice of appeal had not been timely filed, the Court of Appeals granted a motion to dismiss by the State of West Virginia. As of the date of the hearing before the Panel, Hoover owed a balance of $8649.58 on the original award of attorney's fees, $6270.95 in interest, and $377,000.00 in penalties.

Attorney Neuenschwander also alerted the BPR to Hoover's conduct in Hoover v. Disney, a civil action that Hoover commenced pro se in the Circuit Court for Blount County. In that case, Hoover asserted several claims based on a transaction in which he purportedly purchased three horses from Tim Disney, who was represented by Neuenschwander. Hoover sought $10,000,000 in punitive damages. In April of 2010, the circuit court granted summary judgment in favor of Disney and, acting sua sponte, notified Hoover of its intent to impose sanctions pursuant to Tennessee Rule of Civil Procedure 11 because his claim was frivolous. After providing Hoover with an opportunity to respond, the circuit court issued an order on May 26, 2010, holding that Hoover lacked "any evidentiary support and that the claims [were] not warranted" under law. After observing that Hoover's filings were deficient and that he had failed to respond to a properly served request for admissions, the circuit court concluded that the "proceedings ha[d] been a waste of judicial economy and expense." As Hoover admitted during his testimony before the Panel, the order further provided that for a period of one year, Hoover could not file a complaint in the Circuit Court for Blount County without first submitting his pleadings to a screening process designed to ensure compliance with Tennessee Rule of Civil Procedure 11.02.[2] After the dismissal of the claim, Disney filed a malicious prosecution action against Hoover. That case was still pending at the time of the hearing before the Panel.

In addition, the Panel considered Hoover's prior disciplinary record, which included the following: (1) a January 10, 1997 public censure for failure to adequately communicate with clients and the BPR; (2) a February 10, 1997 private informal admonition for failure to adequately communicate with a client; (3) a May 7, 1998 private informal admonition for failure to adequately communicate with a client and the BPR; (4) an October 1, 1999 private informal admonition for trust account overdrafts; (5) an August 6, 2003 private reprimand for "ill-advisedly form[ing] a personal relationship with a woman who came before him in his capacity as a substitute judicial commissioner under the General Sessions judges of Knox

_____

[2] Due to an apparent clerical error, the portion of the May 26, 2010 order outlining the court's sanction was not included in the record. Nevertheless, the findings of fact in the written decision of the Panel provide the content of the missing portion of the order. Also, as noted, Hoover admitted to being sanctioned in the manner described in his testimony before the Panel.

County"; (6) a February 23, 2006 public censure for failure to timely respond to inquires from the BPR; (7) a thirty-day suspension from the practice of law in 2008 for failure to communicate with a client, failure to timely provide the client with her case file, and failure to timely provide the client with the proceeds from the sale of her residence; and (8) a May 28, 2010 private informal admonition for creating a conflict of interest with a client by "failing to communicate with co-counsel, against the specific direction of [the] client."

In a judgment filed on December 17, 2010, the Panel sustained each of the complaints against Hoover. First, the Panel ruled that by charging Whitton an unreasonably high fee and by failing to satisfy Whitton's judgment, Hoover violated Tennessee Supreme Court Rule 8, Rules of Professional Conduct ("RPC") 1.5(a) and 8.4(a) and (g). Second, the Panel found that Hoover failed to adequately inform the Tituses of the status of their case, failed to explain the matter to the extent necessary for them to make informed decisions, and exhibited a lack of diligence in handling their litigation. The Panel concluded that these acts and omissions caused the Tituses to suffer serious financial losses and constituted violations of RPC 1.3, 1.4(a) and (b), 3.2, and 8.4(a) and (d). Third, the Panel found that because Hoover failed to keep LeQuire reasonably informed about the status of his case, failed to timely respond to reasonable requests for information, and failed to properly apprise him of his rights and obligations under the circumstances, he violated RPC 1.4(a) and (b), and 8.4(a) and (d). Finally, as to the two matters reported by attorney Neuenschwander, the Panel found that Hoover committed "multiple acts in total disregard of court deadlines, orders and instructions designed to promote a proper and efficient administration of justice." The Panel concluded that Hoover caused "substantial harmful prejudice to his client" in Edwards, and that he had "consistently impeded the administration of justice in both the Edwards and Disney litigation." The Panel determined that Hoover's conduct violated RPC 1.3, 3.2, and 8.4(a), (d), and (g).

In assessing the appropriate level of discipline for these infractions, the Panel applied the following aggravating factors: (1) substantial experience in the practice of law; (2) the commission of multiple offenses in violation of numerous disciplinary rules; (3) a pattern of misconduct and total disregard for procedural and ethical rules, as well as the rights of clients; (4) a failure to acknowledge wrongdoing; (5) dishonest and selfish motives regarding the purported need to maintain a law practice to generate funds to satisfy financial obligations, despite having consistently disregarded such obligations in the past; and (6) incompetence causing substantial harm to clients and interfering with the administration of justice. The Panel found no mitigating factors, and concluded that Hoover should be disbarred from the practice of law.

On February 14, 2011, Hoover filed a petition for writ of certiorari in the Chancery Court for Knox County seeking review of the Panel's ruling. See Tenn. Sup. Ct. R. 9, § 8.3.

The trial court affirmed the judgment of disbarment in all respects. On November 15, 2011, Hoover filed a notice of appeal to this Court. Approximately two months later, Hoover filed a "Motion to Extend Time for Filing Transcript" in the trial court, seeking thirty days within which to supplement the record by filing a transcript of the deposition in the LeQuire divorce proceeding and a copy of the "file" of the case involving the Tituses. Because Hoover had already filed the notice of appeal, thereby divesting its jurisdiction, the trial court denied the motion. The trial court further observed that allowing Hoover to submit additional evidence would be futile because its review was limited to the record of the evidence developed in the hearing before the Panel. See Tenn. Sup. Ct. R. 9, § 1.3.

## II. Scope of Review

The Supreme Court, as the source of authority of the Board of Professional Responsibility and all of its functions, has the ultimate disciplinary authority pertaining to the licensure of attorneys. Rayburn v. Bd. of Prof'l Responsibility, 300 S.W.3d 654, 660 (Tenn. 2009); Hughes v. Bd. of Prof'l Responsibility, 259 S.W.3d 631, 640 (Tenn. 2008). Absent allegations of irregularities in the procedure before the hearing panel, the trial court's review of the decision by the hearing panel "shall be on the transcript of the evidence before the hearing panel and its findings and judgment." Tenn. Sup. Ct. R. 9, § 1.3; Flowers v. Bd. of Prof'l Responsibility, 314 S.W.3d 882, 891 (Tenn. 2010). The trial court may reverse or modify a decision of the hearing panel only when the panel's findings, inferences, conclusions or decisions are

> (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn. Sup. Ct. R. 9, § 1.3. Moreover, the trial court "shall not substitute its judgment for that of the panel as to the weight of the evidence on questions of fact." Id.; Lockett v. Bd. of Prof'l Responsibility, ___ S.W.3d ___, ___, 2012 WL 2550586, at *3-4 (Tenn. July 3, 2012).

In appeals from judgments of the trial courts, this Court reviews attorney disciplinary matters "upon the transcript of the record from the circuit or chancery court, which shall include the transcript of evidence before the hearing panel." Tenn. Sup. Ct. R. 9, § 1.3. Our standard of review on appeal is identical to that of the trial court and, in consequence, a reversal is warranted only when the panel's "findings, inferences, conclusions, or decisions" fall within one of the five circumstances enumerated in Rule 9, section 1.3. Bd. of Prof'l Responsibility v. Love, 256 S.W.3d 644, 653 (Tenn. 2008) (quoting Tenn. Sup. Ct. R. 9, § 1.3); see also Tenn. Code Ann. § 4-5-322(h) (2011). In particular, this Court will not reverse

the decision of a hearing panel so long as the evidence "furnishes a reasonably sound factual basis for the decision being reviewed." Hughes, 259 S.W.3d at 641 (quoting Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n, 876 S.W.2d 106, 111 (Tenn. Ct. App. 1993)).

### III. Analysis

In this appeal, Hoover argues (1) that the Panel erred by denying his motion for a continuance; (2) that the Panel erred by considering his conduct in Edwards; (3) that the Panel's findings lack sufficient evidentiary support; (4) that disbarment is too severe under these circumstances; and (5) that the trial court erred by denying his post-judgment motion to supplement the record.

### A. Motion for Continuance

Hoover's first contention is that the Panel erred by denying the motion for a continuance he filed two days before the hearing. He contends that he was entitled to a continuance because he was suffering from a severe infection at the time.

Because the decision to grant a motion for a continuance is discretionary, our review is under an abuse of discretion standard. Hunter v. Ura, 163 S.W.3d 686, 709-10 (Tenn. 2005); Blake v. Plus Mark, Inc., 952 S.W.2d 413, 415 (Tenn. 1997). A hearing panel abuses its discretion by "(1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." Lee Med., Inc. v. Beecher, 312 S.W.3d 515, 524 (Tenn. 2010). Moreover, the ruling on a motion for a continuance will not be disturbed on appeal absent a showing of prejudice to the party that sought the continuance. Blake, 952 S.W.2d at 415.

The record demonstrates that the hearing before the Panel had been scheduled several months in advance. Hoover filed his motion for a continuance two days before the hearing. By that point, the BPR had arranged for its witnesses to testify on the scheduled date, and it did not insist upon responses to its outstanding discovery requests. Although Hoover now seeks to rely upon illness as the basis for the continuance, his motion made no reference to any physical infirmity. The only ground he provided was the fact that the parties had outstanding discovery requests. Further, Hoover participated in the hearing, and he has made no attempt to show any prejudice resulting from the denial of his motion for a continuance. This record contains no information calling into question the Panel's determination that the discovery issue did not warrant a last-minute continuance. In light of these circumstances, the Panel did not abuse its discretion by refusing to continue the hearing.

### B. Consideration of Edwards v. Powers

We next address Hoover's contention that the Panel erred by allowing the BPR to present evidence related to his conduct in Edwards, in which the United States District Court

for the Southern District of West Virginia sanctioned Hoover for a variety of misconduct. See 2003 WL 25674812, at *1-4. Hoover asserts that the Panel should not have considered his conduct in Edwards because it was reported by attorney Neuenschwander, who had no involvement in that case. Hoover also alleges that Neuenschwander submitted his complaint to the BPR in an effort to have Hoover disqualified from representing Neuenschwander's ex-wife in an alimony dispute.

Supreme Court Rule 8, RPC 8.3 provides that "[a] lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, shall inform the Disciplinary Counsel of the [BPR]." The district court in Edwards enumerated twelve instances of misconduct by Hoover, which resulted in monetary sanctions that remain unpaid as well as a permanent revocation of his pro hac vice status. See 2003 WL 25674812, at *1-4. As the Panel determined, this conduct—which included failure to comply with multiple court orders and procedural rules—violated multiple Rules of Professional Conduct, including RPC 1.3, which provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client," and RPC 8.4(d), which defines professional misconduct, in relevant part, as engaging "in conduct that is prejudicial to the administration of justice." Clearly, this conduct raised a substantial question as to Hoover's "fitness as a lawyer." Tenn. Sup. Ct. R. 8, RPC 8.3.

Because RPC 8.3 provides that a lawyer with knowledge of conduct by another lawyer that meets these criteria "shall inform" the BPR, Neuenschwander was not only authorized to report the misconduct in Edwards, he was obligated to do so, irrespective of whether he was involved in the case. See id. As a result, the contention that Neuenschwander's lack of involvement in Edwards precluded the Panel from considering Hoover's misconduct in that case is without merit.

We likewise reject Hoover's claim that consideration of his misconduct in Edwards was improper because Neuenschwander lodged the complaint in an effort to disqualify Hoover from representing his wife in an alimony dispute. The Panel based its findings of misconduct regarding the matters reported by Neuenschwander exclusively on court records and properly concluded that any possible motive for filing his complaint was irrelevant to the determination of whether the misconduct resulted in violations of the Rules of Professional Conduct. See Flowers, 314 S.W.3d at 893 (finding that the complainants' motives for filing disciplinary complaints "[did] not render the[] complaints frivolous and certainly [did] not nullify or undermine the findings of the hearing panel and the trial court").

## C. Sufficiency of the Evidence

Although Hoover asserts that the evidence presented at the hearing was insufficient to support the findings of the Panel, he does not specify which of the numerous ethical violations are lacking in this regard. In general terms, Hoover disputes the determination that he acted unethically while representing Ronald and Deborah Titus and Wayne LeQuire. According to Hoover, he was unable to comply with the filing requirements in the Tituses' appeal because a trial transcript had not been prepared by a court reporter. As to his representation of LeQuire, Hoover contends that, contrary to the conclusion of the Panel, his deposition of LeQuire's wife was "extremely thorough" and resulted in an expedient settlement of the case.

As noted, the Panel concluded that Hoover's representation of the Tituses violated several Rules of Professional Conduct, including RPC 1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client."); RPC 1.4(a) ("A lawyer shall . . . keep the client reasonably informed about the status of the matter[.]"); RPC 1.4(b) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."); RPC 3.2 ("A lawyer shall make reasonable efforts to expedite litigation."); RPC 8.4(a) ("It is professional misconduct to . . . violate or attempt to violate the Rules of Professional Conduct . . . [.]"); and RPC 8.4(d) ("It is professional misconduct to . . . engage in conduct that is prejudicial to the administration of justice[.]"). The Panel further found that, during his representation of LeQuire, Hoover violated RPC 1.4(a) and (b), and RPC 8.4(a) and (d).

We find that the record contains substantial and material evidence which supports the Panel's findings. See Tenn. Sup. Ct. R. 9, § 1.3. In his opening statement, Hoover asserted that he "didn't miss any deadlines except for filing [the appellate] brief and the transcript" during his representation of the Tituses. The record of that case establishes that Hoover filed a notice of appeal but neglected to file an appellate brief. On January 11, 2008, the Court of Appeals granted Hoover ten days to file his brief or to show cause why the appeal should not be dismissed. Upon a request by Hoover, the court extended the deadline to February 25, 2008. In a letter dated February 15, 2008, Hoover informed the Tituses that he would "have the brief written on or before February 28, 2008." Hoover did not file the brief until February 29, 2008—four days after the extended deadline. The Court of Appeals dismissed the appeal for failure to file a timely brief and failure to comply with its previous orders. Moreover, Deborah Titus testified that Hoover failed to communicate with her about the appeal and that she only learned the appeal had been dismissed when she contacted the Appellate Court Clerk's Office to check on the status of the case. While Hoover told the Panel that he "did all that could be done, given the circumstances," he acknowledged that "the brief probably should have been filed." In our view, this evidence furnishes a sound basis for the Panel's conclusion that Hoover failed to act with reasonable diligence and

promptness, see Tenn. Sup. Ct. R. 8, RPC 1.3; that he failed to keep the Tituses reasonably informed about their case, see Tenn. Sup. Ct. R. 8, RPC 1.4(a); that he failed to adequately explain the matter to the Tituses, see Tenn. Sup. Ct. R. 8, RPC 1.4(b); that he failed to make reasonable efforts to expedite the Tituses' appeal, see Tenn. Sup. Ct. R. 8, RPC 3.2; and that he engaged in professional misconduct, see Tenn. Sup. Ct. R. 8, RPC 8.4(a), (d).

As to the LeQuire complaint, Hoover admitted to the Panel that he had initially informed LeQuire that he would submit a filing on his behalf by September 15, 2008, but failed to do so until two days later. LeQuire testified that on multiple occasions, including the week leading up to the deposition, Hoover failed to return his phone calls or otherwise communicate with him about the case. In addition, LeQuire asserted that Hoover failed to meet with him as agreed to prepare for the deposition and that, as a result of Hoover's lack of preparation, the deposition went so badly that LeQuire made a settlement offer directly to opposing counsel in excess of what he had initially planned. This evidence furnishes a sound basis for the Panel's determination that Hoover violated RPC 1.4(a) and (b) and engaged in professional misconduct as defined in RPC 8.4(a) and (d) during his representation of LeQuire. Hoover's allegation that his deposition of LeQuire's wife was efficacious and resulted in an expedient settlement amounts to nothing more than a request for this Court to re-weigh the evidence, which our scope of review does not permit. See Sneed v. Bd. of Prof'l Responsibility, 301 S.W.3d 603, 612 ("[T]he reviewing court 'shall not substitute its judgment for that of the panel as to the weight of the evidence on questions of fact.'" (quoting Tenn. Sup. Ct. R. 9, § 1.3)).

In summary, we agree with the trial court that the violations found by the Panel are supported by substantial and material evidence. Tenn. Sup. Ct. R. 9, § 1.3.

### D. Propriety of Disbarment

Hoover next argues that disbarment is too harsh a punishment for his misconduct, which he maintains amounts to nothing more than "reasonable mistakes." He further contends that a more lenient punishment would be consistent with prior attorney discipline cases in this Court.

We rely upon the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards") as guidelines in evaluating the appropriate type of sanction for attorney misconduct. Tenn. Sup. Ct. R. 9, § 8.4; Lockett, ___ S.W.3d at ___, 2012 WL 2550586, at *6. Pursuant to ABA Standard 3.0, we consider the following four factors regarding the severity of a sanction: "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by

the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors."[3] We also consider the general principles guiding the determination of the proper penalty set out in ABA Standards 4 through 8. See Rayburn, 300 S.W.3d at 664. Of particular relevance to the instant matter, "[d]isbarment is generally appropriate when . . . a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or . . . a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client." ABA Standard 4.41(b)-(c). Disbarment is also "generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system." ABA Standard 7.1.

The record demonstrates that on multiple occasions Hoover knowingly failed to perform services for his clients and violated his professional duties, which caused serious or potentially serious injuries to his clients and the legal system. For example, the appeal that Hoover initiated on behalf of the Tituses was dismissed when he failed to timely file a brief despite two extensions of the filing deadline. In Edwards, Hoover's repeated violations of rules and court orders prejudiced his client, interfered with the proceedings, and resulted in monetary sanctions that remained unpaid at the time of the hearing before the Panel. Hoover's failure to prepare for a key deposition in the LeQuire matter led his client to make a settlement offer directly to adversary counsel. The frivolous action against Tim Disney resulted in Rule 11 sanctions designed to prevent Hoover from further abusing the legal system. Also, as noted by the Panel, Hoover's prior disciplinary record included eight instances of misconduct, one of which involved a thirty-day suspension in 2008 for failure to perform services in a timely manner and failure to communicate with his client, much like the complaints filed by Whitton, the Tituses, and LeQuire. See ABA Standard 8.1(b) ("Disbarment is generally appropriate when a lawyer . . . [h]as been suspended for the same or similar misconduct and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the legal system, or the profession."). Moreover, the Panel properly found multiple aggravating factors warranting disbarment, including Hoover's substantial experience practicing law, his commission of multiple offenses in violation of numerous disciplinary rules, his pattern of misconduct, his failure to acknowledge wrongdoing, and his incompetence causing substantial harm to clients and interfering with the administration of justice. In light of Hoover's misconduct, we conclude that the decision by the Panel to impose disbarment in this case was not arbitrary, capricious, or characterized by an abuse of discretion.

---

[3] ABA Standard 9 provides a list of aggravating and mitigating factors, which we consider an illustrative rather than exclusive list of factors. Lockett, ___ S.W.3d at ___, 2012 WL 2550586, at *7.

In addition, "for the sake of uniformity," we review the "sanctions imposed in other cases presenting similar circumstances." Bd. of Prof'l Responsibility v. Allison, 284 S.W.3d 316, 327 (Tenn. 2009). Disbarment has been deemed appropriate for attorney misconduct involving a pattern of neglect despite prior discipline, as is the case here. See, e.g., Sneed, 301 S.W.3d at 617 (approving disbarment where attorney, among other things, neglected to communicate with clients and exhibited a pattern of unethical conduct despite prior disciplinary action against him).

### E. Motion to Supplement the Record

As a final matter, we address Hoover's contention that the trial court erred by denying his motion to supplement the record with a transcript of the deposition of LeQuire's wife, which, he argues, warranted consideration under Tennessee Rule of Civil Procedure 60.02 because it would contradict LeQuire's testimony. As noted, Hoover filed his motion to supplement the record approximately three months after the trial court issued its judgment and two months after he filed his notice of appeal to this Court.

Initially, as the trial court correctly determined, Hoover's filing of a notice of appeal divested the trial court of jurisdiction to consider his later motion. Spence v. Allstate Ins. Co., 883 S.W.2d 586, 596 (Tenn. 1994) ("[A] trial court has no jurisdiction to consider a Rule 60.02 motion during the pendency of an appeal."). Furthermore, absent allegations of irregularities in the procedure before the hearing panel, a trial court's review of a hearing panel decision "shall be on the transcript of the evidence before the hearing panel and its findings and judgment." Tenn. Sup. Ct. R. 9, § 1.3. Because Hoover did not allege any procedural irregularities in the proceeding before the Panel, the trial court could not have considered the additional evidence that he sought to introduce in his motion. See id.; Milligan v. Bd. of Prof'l Responsibility, 301 S.W.3d 619, 625 n.21 (Tenn. 2009) ("[T]he trial court may take additional proof only as necessary to resolve allegations that the hearing panel engaged in irregular procedure.").

### IV. Conclusion

Based on our review of the record, we find that the Panel did not abuse its discretion by denying Hoover's motion for a continuance or by considering his conduct in Edwards. We further conclude that the record supports the findings of the Panel, that disbarment is an appropriate punishment, and that the trial court properly denied Hoover's post-judgment motion to supplement the record. Accordingly, we affirm the judgment of the trial court.[4]

---

[4] Following oral argument in this case, Hoover filed a "Motion for Relief from Judgment," in which he requests that the Court refrain from issuing a judgment pending resolution of a motion for a new trial that he filed in the trial court after he initiated the instant appeal. Because we have determined that it is

(continued...)

-13-

The costs of this appeal are taxed to M. Josiah Hoover, III, and his surety, for which execution may issue if necessary.

_____
GARY R. WADE, CHIEF JUSTICE

---

[4](...continued)
appropriate to issue judgment without delay, this motion is denied.