IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 3, 2009 Session


# ROBERT PHILIP RAYBURN, SR. v. BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE


**Direct Appeal from the Circuit Court for Hamilton County**
**No. 07C967     Jon Kerry Blackwood, Senior Judge, Sitting by Designation**

_____


**No. E2008-01383-SC-R3-BP - Filed December 1, 2009**

_____


This opinion addresses an appeal from a judgment affirming the disbarment of an attorney by a hearing panel designated by the Board of Professional Responsibility. The first issue presented is whether the panel was divested of jurisdiction when the Board approved a proposed offer of a conditional guilty plea that the attorney later accepted with modifications. A second issue is whether the attorney was entitled to a voluntary nonsuit in the trial court after filing a petition for writ of certiorari seeking review of the adverse decision by the panel. Initially, the panel retained jurisdiction to enter the order of disbarment. Further, because the Tennessee Rules of Civil Procedure apply to our rules of disciplinary enforcement, an attorney who files a petition for writ of certiorari is entitled to a voluntary nonsuit; however, principles of sovereign immunity preclude the application of the one-year savings statute, Tennessee Code Annotated section 28-1-105(a). A petition for certiorari must, therefore, be filed within sixty days of the panel judgment in order to preserve an appeal. In summary, the voluntary nonsuit is granted; however, the appeal is dismissed because a second petition for writ of certiorari was not timely filed. We, therefore, reverse the judgment of the trial court as to the denial of a voluntary nonsuit; we affirm the judgment of disbarment by the panel.

**Tenn. Sup. Ct. R. 9, § 1.3 Direct Appeal; Judgment of the Trial Court Reversed and Appeal Dismissed**

GARY R. WADE, J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

William T. Alt (on appeal) and Robert Philip Rayburn, Sr. (pro se before hearing panel, trial court), Chattanooga, Tennessee, for the appellant, Robert Philip Rayburn, Sr.

Randall James Spivey, Nashville, Tennessee, and James A. Vick, Deputy Chief Disciplinary Counsel, Investigations, for the appellee, Board of Professional Responsibility of the Supreme Court of Tennessee.

## OPINION

### Facts and Procedural Background

This appeal involves three petitions for discipline filed by the Board of Professional Responsibility ("BPR") against Robert Philip Rayburn, Sr. ("Rayburn"), a Chattanooga attorney. The Petition, a Supplemental Petition, and a Second Supplemental Petition were filed on May 24, July 23, and September 11, 2006, respectively. On September 28, 2006, the three separate petitions were consolidated for proceedings before a hearing panel ("Panel") appointed by the BPR. See Tenn. Sup. Ct. R. 9, § 8.2. The petitions included allegations of misconduct by four individual complainants, all of whom were former clients of Rayburn: Lloyd Swicegood, Michael Rice, Tina L. Williams, and DeRenda K. Kirby.

Lloyd Swicegood was represented by Rayburn in litigation arising out of a real estate transaction. The litigation settled, and on October 21, 2004, Rayburn received payment from an insurance company in the sum of $30,000 and the adversary party in the sum of $1,000. Although Rayburn deposited the funds into his trust account the next day, the balance due to Swicegood ($20,726.50) was not paid for some seven months until May 25, 2005, after Rayburn had been notified of a disciplinary complaint. Rayburn failed to respond to numerous requests by disciplinary counsel to provide trust account records verifying that the funds were maintained in his trust account from the time they were received until they were disbursed to Swicegood.

Michael Rice was represented by Rayburn in his divorce proceeding. The final divorce decree was entered on November 27, 2000. On June 26, 2002, the sale of Rice's marital residence was approved, netting the sum of $128,403.61. The order approving the sale stated that "the balance of the proceeds from the sale of the marital home will be deposited into an interest bearing account which will require the signatures of both parties for withdrawal." Rayburn paid Rice's wife her half of the proceeds in December of 2002, but Rice's share remained unpaid. On July 13, 2005, after repeated requests for payment by Rice, Rayburn sent Rice a letter informing him that he was withdrawing from representation and that "all accounts between us will be settled" upon entry of the order of withdrawal. The order was entered on August 2, 2005, and on October 12, 2005, in response to a motion filed by Rice's new counsel, the Circuit Court for Hamilton County ordered Rayburn to immediately pay the proceeds of the sale of the marital home, plus interest, to the clerk's office. Rayburn did not pay the $64,201.80 owed to Rice until September 8, 2006, nearly eleven months after entry of the order and more than three months after a Petition for Discipline had been filed with the BPR. The interest owed to Rice for the period during which he was deprived of the funds was $23,676.14, and Rice claimed damages of $23,153.10 for Rayburn's failure to timely tender the funds. These damages included the amount that Rice paid to attorneys to assist in his efforts to recover the money that Rayburn owed.

Tina L. Williams was represented by Rayburn in a personal injury suit. The case settled for $120,000 on July 26, 1994. Rayburn retained $10,998.06 of the settlement proceeds in order to resolve the subrogation interest of Time Insurance Company. There is no evidence that Rayburn maintained these funds in a trust account. On December 14, 2005, the subrogation claim was settled for $1,000. After Rayburn failed to respond to numerous calls and letters requesting payment of the $1,000, counsel for Time Insurance filed a motion to enforce the settlement on March 21, 2006. Rayburn paid the balance of $9,998.06 to Williams on March 23, 2006, but as of the date the Supplemental Petition for Discipline was filed, he had not paid the $1,000 settlement to Time Insurance.

DeRenda K. Kirby was also represented by Rayburn in a personal injury claim. That case settled for $67,000 in January of 2006. On March 24, 2006, Rayburn informed Kirby that he would pay her the settlement proceeds owed to her ($44,000) in a series of five weekly installments. Kirby received cashier's checks for $9,500 on March 24 and April 5, 2006. Kirby received a third cashier's check for $9,500 made payable to her mother, Carolyn Kirby, on May 18, 2006. Rayburn informed Kirby on June 16, 2006, that his accountant had told him he would have to lower the installment payments for the remaining funds because the bank was questioning the amount of money being withdrawn. Moreover, he stated that the checks would have to be sent in different people's names because Rayburn did not want to have to pay taxes on the money. The remaining balance of $15,500 was paid to Kirby by a cashier's check dated August 31, 2006, approximately eight months after the litigation had been resolved. The petition alleged that Rayburn had failed to place the proceeds of Kirby's settlement into a client trust account and had commingled the funds with his own monies.

Based upon the activities alleged in the petition and two supplemental petitions for discipline, the BPR accused Rayburn of violating Rules of Professional Conduct ("RPC") 1.1, 1.2(a), 1.3, 1.4, 1.15(a)-(c), 1.16(d), and 8.4(a)-(d). Rayburn filed answers but did not timely respond to interrogatories and requests for production of documents filed by the BPR. A default judgment on the consolidated petitions was entered against Rayburn on January 4, 2007, with the Panel specifically finding that Rayburn's actions "constitute[d] willful and egregious failures to make discovery and abuses of the discovery process and a clear record of non-compliance and delay, for which sanctions are warranted." A formal hearing date of March 28, 2007 was set to determine "whether and to what extent discipline should be imposed against [Rayburn] for his violations of the Code of Professional Responsibility."

At the March 28th hearing, Rayburn entered into a conditional plea of guilty in exchange for a suspension of his law license for three years. See Tenn. Sup. Ct. R. 9, § 16.1. He was not represented by separate counsel. During the proceedings, disciplinary counsel informed the Panel that a proposed plea offer had been submitted to and approved by the BPR several days earlier, on March 23rd. At the time the BPR approved the offer, however, Rayburn had not agreed to accept the terms.

The Panel approved a conditional guilty plea at the hearing, modifying the proposed terms at Rayburn's request in order to delay the effective date of his suspension until June 1, 2007. The

conditions of the plea agreement precluded Rayburn from accepting any new clients and required him to notify his existing clients of "the pending petitions for discipline, his guilty plea to those petitions, his impending suspension, and his inability to represent those clients after June 1, 2007." The terms directed Rayburn to notify his clients by the earlier of ten days following the entry of the Supreme Court's order imposing discipline, see Tenn. Sup. Ct. R. 9, § 18.1, or April 20, 2007. At Rayburn's request, the notification deadline was extended to April 27, 2007 in the Order Approving Conditional Guilty Plea as Modified, which the Panel entered on April 5, 2007. At the time of the hearing, the Panel Chair warned that, in the event Rayburn should not comply with the notification requirement and file certification of such notification with the BPR by the deadline, "the Board would notify the Panel, and [the Panel would] reconvene at that time."

On April 6, 2007, Rayburn sent a letter to the Panel Chair questioning some of the conditions set forth in the order that had been filed on the previous day. The Panel treated this letter as a Motion to Alter or Amend its April 5th Order Approving Conditional Guilty Plea as Modified and denied relief. When Rayburn did not provide the BPR with certification that he had notified his clients of his guilt and impending suspension by the deadline, the Panel set aside the conditional guilty plea and scheduled a hearing on June 5, 2007, to determine the appropriate discipline. Rayburn failed to appear.

On June 19, 2007, the Panel entered an order of disbarment, finding several aggravating factors applicable, including: (1) substantial experience in the practice of law; (2) a pattern of misconduct, incompetence, or neglect; (3) multiple offenses; (4) a selfish or dishonest motive; and (5) bad-faith obstruction of the disciplinary proceeding by failure to comply with the Panel's rules and orders. There were no mitigating factors. The order required payment of restitution in the amount of $46,829.24 to Michael Rice as a condition of reinstatement.

On August 20, 2007, Rayburn filed a petition for writ of certiorari in the Hamilton County Circuit Court seeking review of the Panel's ruling. See Tenn. Sup. Ct. R. 9, § 8.3. A hearing was scheduled on May 1, 2008 before Judge Jon Kerry Blackwood, sitting by designation. On the day before the scheduled hearing, Rayburn filed a "Notice of Voluntary Nonsuit Without Prejudice," citing as authority Rule 41.01 of the Tennessee Rules of Civil Procedure. In a May 20, 2007 order, the trial court denied Rayburn's request, concluding that the grant of a voluntary nonsuit was not an appropriate disposition of a petition for writ of certiorari. Having reviewed the record of the proceedings provided by the BPR, the trial court entered a ruling on the merits, dismissing Rayburn's petition for writ of certiorari and affirming the judgment of disbarment in all respects. Rayburn filed a timely notice of appeal to this Court.

**Scope of Review**

The Supreme Court is the source of authority of the Board of Professional Responsibility and all of its functions and, as such, has the ultimate disciplinary responsibility for violations of the rules governing our profession. Hughes v. Bd. of Prof'l Responsibility, 259 S.W.3d 631, 640 (Tenn. 2008). We examine judgments in disciplinary matters in light of our inherent power and essential

-4-

and fundamental right to administer the Court's rules pertaining to the licensing of attorneys. Id. (quoting In re Burson, 909 S.W.2d 768, 773 (Tenn. 1995)).

The trial court may reverse or modify a decision of the hearing panel only when the panel's findings, inferences, conclusions or decisions are:

> (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in light of the entire record.

Tenn. Sup. Ct. R. 9, § 1.3. Moreover, the trial court may not "substitute its judgment for that of the panel as to the weight of the evidence on questions of fact." Id.; see also Bd. of Prof'l Responsibility v. Love, 256 S.W.3d 644, 652-53 (Tenn. 2008). We review attorney disciplinary matters "upon the transcript of the record from the circuit or chancery court, which shall include the transcript of evidence before the hearing panel." Tenn. Sup. Ct. R. 9, § 1.3. Our standard of review on appeal is identical to that of the trial court under Rule 9, section 1.3, and, in consequence, we will reverse a hearing panel only when the panel's "findings, inferences, conclusions, or decisions" fall within any of the five circumstances enumerated in the rule. Love, 256 S.W.3d at 653 (quoting Tenn. Sup. Ct. R. 9, § 1.3); see also Tenn. Code Ann. § 4-5-322(h) (2005); City of Memphis v. Civil Serv. Comm'n of Memphis, 216 S.W.3d 311, 316 (Tenn. 2007). "When none of the first three grounds for reversal are present, . . . the hearing panel should be upheld unless the decision was either arbitrary or capricious, 'characterized by an abuse, or clearly unwarranted exercise, of discretion' or lacking in support by substantial and material evidence." Hughes, 259 S.W.3d at 641 (quoting CF Indus. v. Tenn. Pub. Serv. Comm'n, 599 S.W.2d 536, 540 (Tenn. 1980)).

**Analysis**

Now represented by counsel, Rayburn presents two arguments in his appeal: first, that the Panel was divested of jurisdiction when the BPR approved the proposed offer of a conditional guilty plea and therefore had no power to modify the conditional plea, and second, that the trial court erred by holding that he had no right to take a voluntary nonsuit of his petition for writ of certiorari.

**Panel's Jurisdiction to Modify the Conditional Plea Agreement**

During oral argument before this Court, Rayburn, through his counsel, claimed for the first time that the Panel had exceeded its jurisdiction by modifying the terms of the conditional guilty plea offered by the BPR. This Court granted counsel permission to file a supplemental brief on the issue, and the BPR filed a response.

Tennessee Supreme Court Rule 9, section 16.1 provides that an attorney who has been formally charged with violating the Rules of Professional Conduct may tender a conditional guilty plea at any stage of the proceedings. If the matter has been assigned for hearing, as was the case here, the guilty plea shall be "approved or rejected by the Board upon recommendation of the hearing

-5-

panel." Id. "Approval of such a tendered plea by the Board . . . shall divest the hearing panel or trial court of further jurisdiction." Tenn. Sup. Ct. R. 9, § 16.2.

In his post-argument brief, Rayburn describes the procedural history of his conditional plea agreement as follows:

> Prior to the scheduled hearing date the Disciplinary Counsel and [Rayburn] reached agreement on the terms of a proposed settlement. The proposed settlement was submitted by the Disciplinary Counsel to the Board. It then voted to accept the settlement. With the approval obtained from the Board the written Conditional Plea of Guilty was prepared by Disciplinary Counsel. The hearing panel was made aware prior to the scheduled hearing date that a Conditional Plea of Guilty had been reached with [Rayburn].

Rayburn contends that because the BPR had already approved a conditional guilty plea prior to the Panel hearing, the Panel was divested of jurisdiction under Supreme Court Rule 9, section 16.2. Because, Rayburn asserts, the Panel was without jurisdiction to modify the conditional guilty plea, its orders of April 5 and June 19, 2007 were void.

Rayburn's argument is belied by the facts. While the record confirms that disciplinary counsel did discuss a proposed conditional guilty plea at the meeting of the BPR on March 23, 2007, it also establishes that Rayburn did not accept the terms of the conditional guilty plea until March 28th, the date of his hearing before the Panel. On March 23rd, therefore, the BPR had no conditional guilty plea to approve. Moreover, the proposed guilty plea that disciplinary counsel had presented to the BPR on March 23rd was modified, at Rayburn's request, at the hearing on March 28th in order to delay the suspension of Rayburn's law license until June 1, 2007. Finally, even if disciplinary counsel had actually presented the BPR with a conditional guilty plea on March 23rd, the BPR could not have given formal approval. Because the matter had been assigned for hearing by the Panel pursuant to Supreme Court Rule 9, section 8.2, any conditional guilty plea, by the terms of the rule, could only be "approved or rejected by the Board upon recommendation of the hearing panel." Tenn. Sup. Ct. R. 9, § 16.1 (emphasis added).

Because the BPR did not approve a conditional guilty plea prior to the Panel hearing on March 28, 2007, Supreme Court Rule 9, section 16.2 is inapplicable. It was well within the jurisdiction of the Panel to both vacate the modified conditional guilty plea when Rayburn failed to timely notify his existing clients of his impending suspension by the established date, and enter the order of disbarment when Rayburn failed to appear at the June 5th hearing.

### Voluntary Nonsuit of Petition for Writ of Certiorari

Rayburn's second argument, presented in his initial brief, is that he was entitled to voluntarily nonsuit his petition for writ of certiorari in the Circuit Court of Hamilton County. Supreme Court Rule 9, section 1.3 provides that the attorney or the Board "may have a review of the judgment of a hearing panel in the manner provided by Tenn. Code Ann. § 27-9-101 et seq., except as otherwise

provided herein." Tennessee Code Annotated section 27-9-102 (2000) directs that this review shall be obtained through the filing of a petition for writ of certiorari within sixty days of the entry of the order of the hearing panel.  <u>See also</u> Tenn. Sup. Ct. R. 9, §§ 1.4, 8.3.

Rayburn asserts that Tennessee Rule of Civil Procedure 41.01 permits a voluntary nonsuit of a petition for writ of certiorari.  In response, the BPR argues that because the petition for writ of certiorari to the chancery or circuit court is styled in Tennessee Supreme Court Rule 9, section 1.4 as "[a]n appeal from the recommendation or judgment of a hearing panel," the Tennessee Rules of Appellate Procedure, and not the Rules of Civil Procedure, apply.  Accordingly, the BPR points us to Tennessee Rule of Appellate Procedure 15(a), rather than Tennessee Rule of Civil Procedure 41.01, for guidance.  Rule 15(a), which governs the voluntary dismissal of an appeal, does not include an entitlement to a dismissal without prejudice.  <u>Jackson-Madison County Gen. Hosp. Dist. v. Tenn. Health Facilities Comm'n</u>, No. M1999-02804-COA-R3-CV, 2001 WL 1504745, at *4 (Tenn. Ct. App. Nov. 28, 2001) (citing <u>Banks v. Ky. Live Stock Ins. Co.</u>, 7 Tenn. Civ. App. (Higgins) 419, 429 (1916)).

Rule 1 of the Tennessee Rules of Appellate Procedure stipulates that the "rules shall govern procedure in proceedings before the Supreme Court, Court of Appeals, and Court of Criminal Appeals."  Conversely, Tennessee Rule of Civil Procedure 1 states that "the Rules of Civil Procedure shall govern procedure in the circuit or chancery courts in all civil actions, whether at law or in equity."  Because the petition for writ of certiorari was pending in the circuit court, the Rules of Appellate Procedure have no application here, either by analogy or otherwise.  This is supported by section 23.3 of Tennessee Supreme Court Rule 9, which directs that except as otherwise provided in the Supreme Court Rules, "the Tennessee Rules of Civil Procedure and the Tennessee Rules of Evidence apply in disciplinary cases."  Clearly, therefore, the Tennessee Rules of Civil Procedure apply to the appeal of hearing panel judgments to the trial court.

Under our Rules of Civil Procedure, "the plaintiff shall have the right to take a voluntary nonsuit to dismiss an action without prejudice by filing a written notice of dismissal at any time before the trial of a cause and serving a copy of the notice upon all parties," among other means and pursuant to certain conditions, none of which are applicable here.  Tenn. R. Civ. P. 41.01(1); <u>see also</u> <u>Rickets v. Sexton</u>, 533 S.W.2d 293, 294 (Tenn. 1976) ("The lawyer for the plaintiff is the sole judge of the matter and the trial judge has no control over it.  It is not necessary that he approve the action . . . nor may he nullify the rules by an order 'disallowing' the nonsuit.  All that is required . . . is the filing of a written notice of dismissal.").  Rule 41.01(1), therefore, provides that an attorney appealing a hearing panel's judgment by means of a petition for writ of certiorari to a circuit or chancery court is entitled to a voluntary nonsuit of his or her petition.  Indeed, a voluntary nonsuit after the filing of a petition for writ of certiorari may be entirely appropriate in some circumstances.  For example, a party may decide for financial considerations to dismiss the petition.  A settlement or a change in circumstances obviating the need for relief might also warrant the filing of a voluntary nonsuit.  Because Rule 41.01(1) applied in the proceedings, the trial court erred by denying Rayburn's motion and holding that "[a] Voluntary Non-Suit Without Prejudice is not an appropriate disposition of the Writ of Certiorari."  We must, therefore, reverse the judgment of the trial court and

grant the motion for a voluntary nonsuit to the extent that the appeal from the decision of the Panel is dismissed.

Rayburn's motion, however, suggests that the voluntary dismissal of his suit is "without prejudice." This tracks the language of Rule 41.01(1), but, of course, that rule does not guarantee that a lawsuit that has been voluntarily dismissed can be refiled in all circumstances. The 2005 Advisory Commission Comments to Rule 41.01 warn that "[p]laintiffs and their counsel should note that in certain circumstances a case cannot be recommenced after the filing of a voluntary nonsuit." Further, the 2006 Comments suggest that "a plaintiff must carefully consider . . . whether the savings statute . . . authorizes a recommencement of the plaintiff's action after a nonsuit." The savings statute, where applicable, permits a plaintiff who has voluntarily nonsuited a properly filed action to refile within a year of the nonsuit. Tenn. Code Ann. § 28-1-105(a) (2000) ("If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, . . . the plaintiff . . . may . . . commence a new action within one (1) year . . . .").

This Court recently addressed the application of the savings statute to actions against state entities such as the BPR. In Davidson v. Lewis Brothers Bakery, an injured employee filed a timely workers' compensation claim against his employer and the Second Injury Fund, an administrative unit of the Tennessee Department of Labor and Workforce Development. 227 S.W.3d 17, 18 (Tenn. 2007). The employee took a voluntary nonsuit pursuant to Tennessee Rule of Civil Procedure 41.01 and, eight months later, refiled his claim against both defendants. Id. at 18. Because principles of sovereign immunity prevent any party from bringing a lawsuit against "the State," which includes, inter alia, the boards of the State, unless a statute clearly and unmistakably discloses the General Assembly's intent to permit the suit, id. at 19, we held that when a

> claimant voluntarily non-suit[s] a claim against a unit of the State's government, . . . the principles of sovereign immunity and waiver . . . remain operable. Because the savings statue does not contain the waiver of sovereign immunity necessary to support a suit against the State . . . section 28-1-105(a) does not "save" a claim against the Fund when the applicable statute of limitations has otherwise run.

Id. at 20; see also Lynn v. City of Jackson, 63 S.W.3d 332, 337 (Tenn. 2001) ("[T]he general rule in Tennessee is that savings statutes may not be applied to extend the period within which an action must be filed under the [Tennessee Government Tort Liability Act].").

The BPR, like the Second Injury Fund, is an arm of the State. Thus, the same sovereign immunity principles that prevented the refiling of the claim against the Fund in Davidson also apply here. Moreover, the sixty-day period within which Rayburn was permitted file a petition for writ of certiorari from the Panel's June 19, 2007 order of disbarment, see Tenn. Code Ann. § 27-9-102 and Tenn. Sup. Ct. R. 9, § 8.3, has long since passed. Rayburn's voluntary non-suit, therefore, has had the effect of barring any consideration of his petition for writ of certioriari.

The dismissal of an appeal of a panel judgment of disbarment or suspension in excess of three months is treated as if no appeal had been taken. See Tenn. Sup. Ct. R. 9, § 8.4 (providing that the BPR shall forward a copy of the judgment to the Supreme Court for review and approval or disapproval of the proposed punishment). Our responsibility, therefore, is to "review the recommended punishment provided in [the] judgment . . . with a view to attaining uniformity of punishment . . . and appropriateness of punishment under the circumstances of each particular case." Id. Under these circumstances, we affirm the order of disbarment.

In conducting our review of the BPR's punishment under Rule 9, section 8.4, "we are required to review all of the circumstances of the particular case and also, for the sake of uniformity, [the] sanctions imposed in other cases presenting similar circumstances." Bd. of Prof'l Responsibility v. Allison, 284 S.W.3d 316, 327 (Tenn. 2009) (citing Bd. of Prof'l Responsibility v. Maddux, 148 S.W.3d 37, 40 (Tenn. 2004)). The ABA Standards for Imposing Lawyer Sanctions, ("ABA Standards") serve as guidelines for attorney discipline. Tenn. Sup. Ct. R. 9, § 8.4; Allison, 284 S.W.3d at 327. Under section 3.0 of those standards, four factors should be considered regarding the severity of a sanction: "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." General principles guiding the determination of the proper penalty appear in sections 4 through 8 of the ABA Standards, while section 9 lists the relevant aggravating and mitigating circumstances.

The record demonstrates that Rayburn knowingly and repeatedly deprived his clients of funds to which they were entitled. Rayburn's clients were not paid the balances due until months after their cases had settled. In some cases, the proof established that Rayburn had commingled his clients' settlement proceeds with his own personal funds and was not forthcoming with his clients as to when those funds would be paid. Further, the amounts involved were substantial. For example, Rayburn withheld payment of over $64,000 to Rice for over four years after the sale of Rice's marital home, and Rice incurred considerable expense in his effort to recover those funds. The other three instances of misconduct also involved the misuse of funds resulting in injury to Rayburn's clients. See ABA Standards § 4.11 ("Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client."); id. § 4.61 ("Disbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potential injury to the client."). Finally, Rayburn's years of practice experience, pattern of misconduct and neglect, dishonesty with his clients, and delay and obstruction of the disciplinary proceedings all are aggravating factors warranting disbarment.

**Conclusion**

The Panel acted within its authority in modifying the conditional guilty plea when Rayburn failed to comply with its terms; however, Rayburn was permitted by Tennessee Rule of Civil Procedure 41.01 to take a voluntary nonsuit of his petition for a writ of certiorari from the judgment of the Panel. Accordingly, the judgment of the trial court is reversed and Rayburn's appeal of the Panel decision is dismissed. The order of disbarment is affirmed. This opinion is not subject to

rehearing under Rule 39 of the Tennessee Rules of Appellate Procedure. The Clerk is directed to certify this opinion as final and to issue the mandate immediately. Within ten days, Rayburn shall file an affidavit with the BPR showing that he has complied with all of the requirements of Tennessee Supreme Court Rule 9, section 18. Tenn. Sup. Ct. R. 9, § 18.8. The costs of this appeal are taxed to Robert Philip Rayburn, Sr., and his surety, for which execution may issue if necessary.


_____
GARY R. WADE, JUSTICE