# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
January 10, 2018 Session Heard at Knoxville

## BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE v. MICHAEL GIBBS SHEPPARD

**Direct Appeal from the Chancery Court for Williamson County**
**No. 45692      Robert L. Jones, Judge**

_____

### No. M2017-00804-SC-R3-BP

_____

This is a direct appeal of a disciplinary proceeding against a Brentwood attorney arising out of the mismanagement of client funds held in trust. A hearing panel of the Board of Professional Responsibility determined that the attorney had violated Rules 1.15 (safekeeping property and funds) and 8.4 (misconduct) of the Tennessee Rules of Professional Conduct. The hearing panel recommended that the attorney be suspended for sixty days, to be followed by two years of probation under the supervision of a practice monitor, and that he complete fifteen hours of continuing legal education on law office management and trust accounting procedures. The chancery court modified the hearing panel's decision by increasing the periods of suspension and probation and by imposing additional conditions of probation. We hold that the hearing panel's decision was supported by material and substantial evidence and was not arbitrary, capricious, or an abuse of discretion. The chancery court, therefore, erred in modifying the hearing panel's decision. We reverse the judgment of the chancery court and affirm the hearing panel's decision.

**Tenn. Sup. Ct. R. 9, § 1.3 (2013)**
**(currently Tenn. Sup. Ct. R. 9, § 33.1 (d) (2017))**
**Judgment of the Chancery Court Reversed;**
**Decision of the Hearing Panel Affirmed**

SHARON G. LEE, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Alan D. Johnson, Brentwood, Tennessee, for the appellant, Board of Professional Responsibility.

Edward M. Yarbrough and W. Justin Adams, Nashville, Tennessee, for the appellee, Michael Gibbs Sheppard.

# OPINION

## I.

Michael Gibbs Sheppard graduated from law school in 1982. For many years, he worked for an insurance company in Ohio. In 1999, Mr. Sheppard was admitted to practice law in Tennessee. Six years later, he and attorney Perry A. Craft founded the law firm of Craft & Sheppard in Brentwood, Tennessee. Mr. Sheppard was the firm's managing partner and was responsible for oversight of the firm's financial records and trust account.

Between 2009 and 2013, client funds in three cases were commingled with law firm funds. Client funds were not maintained in Craft & Sheppard's trust account but were transferred electronically to Craft & Sheppard's operating account to pay expenses.

On November 17, 2014, the Board of Professional Responsibility ("Board") filed a Petition for Discipline against Mr. Sheppard, alleging that he had violated Rule 1.15 (safekeeping property and funds)[1] and Rule 8.4 (misconduct)[2] by, among other things,

---

[1] At the time of the alleged misconduct, Rule of Professional Conduct 1.15 provided:

   (a) A lawyer shall hold property and funds of clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own property and funds.
   . . . .

   (d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall . . . promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such funds or other property.

   (e) When in the course of representation a lawyer is in possession of property or funds in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property or funds as to which the interests are not in dispute.

Tenn. Sup. Ct. R. 8, RPC 1.15 (2013).

[2] At the time of the alleged misconduct, Rule of Professional Conduct 8.4 provided:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
   . . . .

failing to maintain client funds in trust and by commingling client funds with law firm funds. In response, Mr. Sheppard did not dispute that he had mismanaged the trust account. He submitted, however, that his misconduct was not intentional but the result of his negligence and inexperience in trust account management. Mr. Sheppard also contended that the Board should not treat him any differently than his law partner, Mr. Craft, to whom the Board had issued only a public censure for his misconduct relating to the firm's trust account.[3]

*Hearing Panel Proceedings*

On August 25, 2016, a hearing panel of the Board convened to hear the parties' evidence. Testimony focused mainly on the management of client funds received by Craft & Sheppard from settlements in the Utica, Shedd, and Ali cases.

In 2003, Utica, an insurance company, hired Mr. Sheppard to represent its interests in a subrogation claim arising out of a fire loss. After Craft & Sheppard was established, Utica became a client of the firm and Mr. Craft began handling the matter. Mr. Craft eventually settled the case for $145,000, which was deposited in the firm's trust account in early February 2011. Utica and Craft & Sheppard disagreed about the amount of the attorney fee to be deducted from the settlement funds.[4] Neither party had a copy of the fee agreement. The funds should have remained in trust until Utica and the firm resolved the fee dispute. *See* Tenn. Sup. Ct. R. 8, RPC 1.15(e). However by February 15, 2011, the funds in the trust account had fallen to $48,701.98; by February 28, 2011, the balance was only $7,077.58.

On April 26, 2011, Mr. Sheppard sent Utica an email stating, "[t]he settlement funds reside in our trust account and no one has 'used' these funds." Yet bank records reflected that the firm's trust account balance on that date was only $104,850.62. In June

---

(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation[.]

Tenn. Sup. Ct. R. 8, RPC 8.4 (2013).

[3] The Board had publicly censured Mr. Craft on October 29, 2014, noting that his failure to maintain clients' funds "in the firm's trust account for the duration of the representation" violated Rule 5.1 of the Rules of Professional Conduct. Broadly, Rule 5.1 requires a partner in a law firm to make reasonable efforts to ensure that the firm complies with the Rules of Professional Conduct and to take remedial action to avoid or mitigate consequences from violations of the Rules of Professional Conduct of which the partner is aware. *See* Tenn. Sup. Ct. R. 8, RPC 5.1 (2013).

[4] According to Mr. Sheppard, Craft & Sheppard initially retained a third of the $145,000 and sent Utica a check for the balance, understanding the parties had a contingency fee agreement. Utica objected and claimed it was entitled to $130,000 pursuant to a "blended rate" agreement. Craft & Sheppard stopped payment on the check.

2011, Mr. Craft emailed Utica assuring it that "your funds are safe and secure in the firm's trust account." The funds, however, were not safe and secure. Eventually, Utica and Craft & Sheppard settled their fee dispute for $130,000, each partner agreeing to pay Utica one-half of that amount. Mr. Sheppard filed for bankruptcy protection in March 2014, listing Utica as a creditor. He later settled his obligation to Utica for $27,000. According to Mr. Sheppard, Mr. Craft paid Utica only $30,000 of his share of the debt.

In the second case, Donna Shedd hired Craft & Sheppard to handle a wrongful death lawsuit against a doctor and a hospital, arising out of her daughter's death. In July 2009, during the trial of the case, Ms. Shedd's claim against the doctor was settled for $1,000,000; the case against the hospital resulted in a defense verdict. Craft & Sheppard deposited the settlement funds in the trust account. The firm withdrew its one-third contingency fee and paid litigation expenses, leaving about $400,000 in the trust account for Ms. Shedd's share of the settlement. Shortly after Craft & Sheppard received the settlement funds, the father of Ms. Shedd's deceased daughter moved to intervene in the lawsuit seeking one-half of the settlement proceeds. The trial court denied the request and the father appealed. Mr. Craft represented Ms. Shedd on appeal.[5]

In mid-December 2009, while the appeal was pending, the firm paid Ms. Shedd $200,000 from the trust account, which was roughly one-half of the remaining settlement funds. Therefore, the trust account balance should have been at least $200,000. Yet on December 18, 2009, the balance was $56,830.19; on February 26, 2010, there was only $11,497.29 in the trust account; on March 29, 2013, the balance fell to $8,281.39; and by April 29, 2013, the trust account balance was $9,357.59. On July 11, 2013, Craft & Sheppard paid Ms. Shedd $208,022.37 after Mr. Sheppard borrowed $125,000 to cover the deficit in the firm's trust account.

In the Ali case, Craft & Sheppard deposited $400,000 in its trust account from the settlement of the personal injury claim in late December 2009 and withdrew its attorney fee. Mr. Craft, who had handled the matter, entered into an arrangement to "slow pay" the client's portion of the settlement proceeds. As of February 26, 2010, the trust account balance was only $11,497.29, far less than the amount of client funds that should have been in the trust account. Eventually, Craft & Sheppard overpaid the Ali client more than $27,000.

Mr. Sheppard admitted in his testimony before the hearing panel that he had mismanaged the trust account by allowing client funds to be improperly transferred into the firm's operating account. He explained that his actions were not intentional but the result of lack of oversight, inexperience in trust account management, inadequate recordkeeping, personal family and financial problems, and lack of knowledge of Mr.

---

[5] *See Shedd v. Cmty. Health Sys., Inc.*, No. W2010-02140-COA-R3-CV, 2010 WL 4629020, at *1 (Tenn. Ct. App. Nov. 12, 2010), *perm. app. denied* (Tenn. Apr. 13, 2011).

- 4 -

Craft's arrangements with his clients. According to Mr. Sheppard, Mr. Craft mainly handled the Utica, Shedd, and Ali cases, and Mr. Sheppard was unfamiliar with the financial details of the cases. For example, Mr. Craft arranged the gradual payout of the Ali settlement without informing Mr. Sheppard, which resulted in an overpayment to the client.

Mr. Sheppard insisted that he tried to keep Mr. Craft informed about the firm's finances by presenting him with written financial reports almost every day. The two reports admitted into evidence consist of one-page spreadsheets showing only the date, recipient, and amount of outstanding checks, as well as the balance of each of the firm's three bank accounts, including the firm's trust account.

Mr. Sheppard denied intentionally misleading Utica when he assured it that the disputed funds remained in the trust account. He explained that he did not realize the gravity of his mismanagement until he had to borrow money to pay the settlement proceeds owed to Ms. Shedd. Mr. Sheppard also noted that he had continued working to pay off the substantial debt owed to the firm's creditors.

Mr. Craft testified that he trusted Mr. Sheppard to manage the firm's finances. He denied ever seeing or accessing the firm's bank account records or making any online transfers between the trust account and the operating account, and claimed to have relied exclusively on Mr. Sheppard for financial information. According to Mr. Craft, only Mr. Sheppard or his son had access to the online bank account records. Mr. Craft left the firm in July 2013.

A former Craft & Sheppard paralegal who worked for Mr. Craft after he left the firm testified that the firm's financial records were on a laptop computer maintained by Mr. Sheppard's son.

A lawyer who had previously worked as a law clerk at Craft & Sheppard and a former client both testified that Mr. Sheppard had a good reputation for veracity and worked hard for his clients. They also attested to the substantial amount of pro bono work Mr. Sheppard did for individuals, especially veterans and teachers.

The hearing panel found that Mr. Sheppard had failed to properly maintain and monitor client trust accounts, which resulted in the commingling of client funds, use of client funds to pay for operating expenses, and a diminished balance of client funds in the trust account. The hearing panel concluded that these actions constituted "knowing" violations of Rules of Professional Conduct 1.15 and 8.4, and that Mr. Sheppard "knowingly misled" at least one client about the status of the client's trust funds. The hearing panel, however, found no proof of "intentional acts" that benefited Mr. Sheppard to the detriment of others or of "acts or omissions [that] seriously injured his clients."

Having determined that Mr. Sheppard knowingly violated his duty to safeguard client property and knowingly engaged in misconduct in violation of the Rules of Professional Conduct, the hearing panel considered evidence of aggravating and mitigating factors listed under the American Bar Association Standards for Imposing Lawyer Sanctions (the "ABA Standards") before determining the appropriate sanction. The hearing panel found no proof of any aggravating factor. On the other hand, it found "significant" evidence of the following mitigating factors: absence of prior discipline; absence of a dishonest or selfish motive for Mr. Sheppard's knowing violations; a good faith effort to rectify a violation by borrowing funds; inexperience in accounting and office management; good character and pro bono efforts; remorse; and a significant length of time between the misconduct and the date of the hearing. The hearing panel also considered the Board's public censure of Mr. Craft as a mitigating factor, having previously noted that the public censure imposed on Mr. Craft created a "grave concern" about the consistency of the sanctions.

The hearing panel determined that Mr. Sheppard should be suspended from the practice of law for sixty days, after which he would be on probation for two years. During the probationary period, a practice monitor would be required to supervise Mr. Sheppard's accounting and management practices and make regular reports to the Board. The hearing panel also determined that Mr. Sheppard should complete fifteen hours of continuing legal education on law office management and trust account procedures.

*Chancery Court Proceedings*

The Board sought review of the hearing panel's decision in the Williamson County Chancery Court, contending that the ruling was arbitrary, capricious, and characterized by an abuse of discretion, as well as unsupported by the evidence; and that the hearing panel's factual findings and legal conclusions warranted disbarment.

Following a hearing in February 2017, the chancery court held that the hearing panel's decision to suspend Mr. Sheppard for knowingly mismanaging client funds did not conflict with the ABA Standards. The chancery court affirmed all mitigating factors identified by the hearing panel. Echoing the hearing panel's concern about the sanction imposed on Mr. Craft, the chancery court noted that a longer suspension for Mr. Sheppard would have been appropriate but for the lighter sanction imposed on Mr. Craft. The chancery court, however, found that there was substantial evidence of two aggravating factors: dishonest or selfish motive and substantial experience in law. And the chancery court found that "there was harm" to Utica.

Based on these findings, the chancery court modified the hearing panel's ruling. The chancery court decided that Mr. Sheppard should be suspended for one year, with the first sixty days to be served on active suspension and the remainder to be served on probation. After the one-year suspension period, Mr. Sheppard was to be on probation for

- 6 -

another five years, with the first two years supervised by a practice monitor. Additionally, the chancery court prohibited Mr. Sheppard's participation in cases involving trust funds exceeding $5,000 during the five-year probation period, unless he associated counsel to assist him.

*Supreme Court Review*

The Board appeals to this Court and argues that both the hearing panel and the chancery court incorrectly identified and applied the ABA Standard applicable to Mr. Sheppard's ethical violations; failed to consider appropriate aggravating and mitigating factors; and erred by recommending suspension rather than disbarment. The Board also contends that the chancery court impermissibly modified the sanction imposed by the hearing panel.

Mr. Sheppard argues that the Board is seeking to have this Court reweigh the hearing panel's findings of fact; that the hearing panel did not abuse its discretion and appropriately relied on the applicable ABA Standards; and that the hearing panel's sanction was consistent with sanctions imposed in similar cases. In addition, Mr. Sheppard submits that the chancery court erroneously modified the hearing panel's ruling.

**II.**

*Standard of Review*

This Court has the inherent and undisputed power to regulate and supervise the practice of law in Tennessee. *Hyman v. Bd. of Prof'l Responsibility*, 437 S.W.3d 435, 444 (Tenn. 2014) (citing *In re Burson*, 909 S.W.2d 768, 772–73 (Tenn. 1995)). Our duty to regulate this state's legal practice includes the ultimate responsibility of enforcing our rules of professional conduct. *Garland v. Bd. of Prof'l Responsibility*, 536 S.W.3d 811, 816 (Tenn. 2017). The Board derives its authority and functions from this Court. *Id.* (citing *Brown v. Bd. of Prof'l Responsibility*, 29 S.W.3d 445, 449 (Tenn. 2000)). Thus, lower courts may review only the actions of hearing panels of the Board to the extent expressly authorized by this Court. *See Brown*, 29 S.W.3d at 449 (quoting *Fletcher v. Bd. of Prof'l Responsibility*, 915 S.W.2d 448, 450 (Tenn. Ct. App. 1995)).

Our appellate standard of review for a disciplinary decision is the same as that applied by a trial court. *Bd. of Prof'l Responsibility v. Reguli*, 489 S.W.3d 408, 417 (Tenn. 2015) (citing *Moncier v. Bd. of Prof'l Responsibility*, 406 S.W.3d 139, 150 (Tenn. 2013)). A trial court reviews a hearing panel's judgment "on the transcript of the evidence before the hearing panel and the hearing panel's findings and judgment." Tenn.

Sup. Ct. R. 9, § 1.3 (2013); *accord* Tenn. Sup. Ct. R. 9, § 33.1(b) (2014).[6] The trial court may reverse or modify the judgment when

> the rights of the petitioner have been prejudiced because the panel's finding, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in light of the entire record.

Tenn. Sup. Ct. R. 9, § 1.3 (2013); *Bd. of Prof'l Responsibility v. Love*, 256 S.W.3d 644, 653 (Tenn. 2008). That said, "the trial court may not substitute its judgment for that of the panel as to the weight of the evidence on questions of fact." *Bd. of Prof'l Responsibility v. Allison*, 284 S.W.3d 316, 322 (Tenn. 2009); *see also Hughes v. Bd. of Prof'l Responsibility*, 259 S.W.3d 631, 652 (Tenn. 2008) (Holder, J., concurring and dissenting) ("[T]rial courts are no longer permitted to reweigh the evidence.").

In deciding whether substantial and material evidence supports a hearing panel's decision, the reviewing court examines "whether the evidence furnishes a reasonably sound factual basis for the decision being reviewed." *Sallee v. Bd. of Prof'l Responsibility*, 469 S.W.3d 18, 36 (Tenn. 2015) (quoting *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 612 (Tenn. 2010) (internal citations omitted)). Ultimately, the basis for a trial court's modification of a hearing panel's decision "must be found in the enumerated circumstances listed in Tennessee Supreme Court Rule 9, section 1.3." *Love*, 256 S.W.3d at 652.

The Board, as the party challenging the hearing panel's decision, has the burden of showing that the hearing panel abused its discretion. *Reguli*, 489 S.W.3d at 418 (citing *Ballard v. Herzke*, 924 S.W.2d 652, 659 (Tenn. 1996)). A hearing panel abuses its discretion by "appl[ying] an incorrect legal standard, or reach[ing] a decision which is against logic or reasoning that causes an injustice to the party complaining." *Id.* (quoting *Sallee*, 469 S.W.3d at 42) (alterations in original). Under this deferential standard of review, where reasonable minds can disagree over the propriety of a hearing panel's decision, we will uphold the ruling. *Sallee*, 469 S.W.3d at 42 (quoting *State v. Scott,* 33 S.W.3d 746, 752 (Tenn. 2000)).

Mr. Sheppard does not challenge the hearing panel's findings that he violated Rules of Professional Conduct 1.15 and 8.4. Thus, the crux of this appeal is the proper sanction for Mr. Sheppard's misconduct. We, therefore, will examine the hearing panel's

---

[6] Because the initiating complaints were filed in 2013, we apply the pre-2014 version of Rule 9. *See Cody v. Bd. of Prof'l Responsibility*, 471 S.W.3d 420, 424 n.9 (Tenn. 2015).

decision in light of the applicable ABA Standards, evidence of aggravating and mitigating factors, and sanctions imposed in similar cases.

*ABA Standards*

We begin by considering the applicable ABA Standards. The Board contends that both the hearing panel and the chancery court incorrectly identified and applied the ABA Standard applicable to Mr. Sheppard's ethical violations. Mr. Sheppard disagrees.

A hearing panel must consider the applicable ABA Standards when determining the proper discipline for attorney misconduct. *Walwyn v. Bd. of Prof'l Responsibility*, 481 S.W.3d 151, 166 (Tenn. 2015) (citing Tenn. Sup. Ct. R. 9, § 8.4). The ABA Standards provide "'guideposts' for attorney discipline but are not considered 'rigid rules that dictate a particular outcome.'" *Bd. of Prof'l Responsibility v. Barry*, No. M2016-02003-SC-R3-BP, 2018 WL 914798, at *8 (Tenn. Feb. 16, 2018) (quoting *Hyman*, 437 S.W.3d at 447). "[A]nalysis of the proper discipline involves two steps: first, identify the presumptively appropriate sanction applicable to the established misconduct, and then consider whether that sanction should be increased or decreased due to aggravating and mitigating circumstances, if any." *Bd. of Prof'l Responsibility v. Cowan*, 388 S.W.3d 264, 268 (Tenn. 2012); *see also* ABA Standard 9.1. Absent mitigating or aggravating factors, the presumptive sanctions apply. *Talley v. Bd. of Prof'l Responsibility*, 358 S.W.3d 185, 194 (Tenn. 2011). Tribunals should also consider the duty violated by the lawyer, the lawyer's mental state, and actual or potential injury caused by the lawyer's misconduct. ABA Standard 3.0; *see also Cowan*, 388 S.W.3d at 268. "[T]he severity of the presumptive sanction varies depending upon the lawyer's mental state—whether the lawyer acted intentionally, knowingly, or negligently—and the seriousness of the actual or potential injury caused by the lawyer's misconduct." *Maddux v. Bd. of Prof'l Responsibility*, 409 S.W.3d 613, 624 (Tenn. 2013).

The hearing panel determined that Mr. Sheppard knowingly violated his duty to safeguard client property and knowingly engaged in misconduct in violation of Rules of Professional Conduct 1.15 and 8.4. Therefore, ABA Standard 4.1 applies. The appropriate sanctions for an attorney's failure to preserve client property under ABA Standard 4.1 are as follows:

> 4.11 Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.

> 4.12 Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

4.13 Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.

4.14 Admonition is generally appropriate when a lawyer is negligent in dealing with client property and causes little or no actual or potential injury to a client.

The hearing panel did not expressly state whether it relied on ABA Standard 4.11 (disbarment) or 4.12 (suspension) but concluded that a suspension was appropriate. The chancery court found that both ABA Standards 4.11 and 4.12 applied. The Board argues that only ABA Standard 4.11 applies and that, therefore, the hearing panel and the chancery court erred by finding that suspension, not disbarment, was the appropriate sanction. We disagree.

In its written decision, the hearing panel did not specifically reference the ABA Standards. Yet the record reflects that the hearing panel relied on the ABA Standards in assessing the appropriate sanction. At the outset of the disciplinary hearing, the hearing panel specifically asked the parties to address "concepts such as knowing . . . [and] fraudulent" under the ABA Standards. Later, in its written decision, the hearing panel incorporated language from the ABA Standards in discussing Mr. Sheppard's misconduct as well as relevant aggravating and mitigating factors. The hearing panel stated, for example, that it had heard proof about and considered "whether or not Mr. Sheppard's acts or omissions were intentional, knowing or negligent; . . . whether or not clients or others were seriously injured by the acts or omissions of Mr. Sheppard[;] and . . . whether or not there were either aggravating or mitigation circumstances requiring further action in consideration of a sanction." This language tracks that of ABA Standard 4.1 and leaves little doubt that the hearing panel actively considered the appropriate ABA Standards.

The hearing panel's omission in its written decision of its reliance on a specific ABA Standard is not a fatal flaw because the hearing panel's decision comports with the appropriate ABA Standards. In language tracking that of ABA Standard 4.12, the hearing panel found that Mr. Sheppard "knew or should have known" that his "improper trust fund management," which resulted in commingling client funds and using them to pay expenses of the firm, violated his ethical duties to clients. The record supports these findings. Mr. Sheppard admitted during his testimony that the firm's trust account balance fell below the amount owed to clients on many occasions. He attributed this conduct to his inexperience in accounting and denied any intentional or knowing misappropriation.

The Board argues that only ABA Standard 4.11 applies because the hearing panel found that Mr. Sheppard improperly "knowingly used" client property. Both ABA Standards 4.11 and 4.12 involve misconduct that causes injury or potential injury to a client. The key difference is that under 4.11, the lawyer "knowingly converts client

- 10 -

property," while under 4.12, the lawyer "knows or should know that he is dealing improperly with client property." Whether an attorney knowingly converts client funds or knows or should know that he is dealing improperly with client funds is a question of fact—and often a close question for the fact-finder. Here, the hearing panel saw and heard the witnesses, assessed their credibility, and decided that Mr. Sheppard "knowingly used [client funds] inappropriately" but not to the level of a knowing conversion. The decision is supported by material and substantial evidence. We do not substitute our judgment for that of the hearing panel as to the weight of the evidence on questions of fact. Under these facts, ABA Standard 4.11 was not the only applicable Standard the hearing panel could have considered. We conclude that the hearing panel's decision to suspend Mr. Sheppard, as provided under ABA Standard 4.12, was supported by material and substantial evidence and was not arbitrary and capricious.

Ultimately, the hearing panel had the authority to consider both ABA Standards 4.11 and 4.12 in determining the proper sanction for Mr. Sheppard's misconduct. *See Bd. of Prof'l Responsibility v. Daniel*, No. E2017-01170-SC-R3-BP, 2018 WL 2750058, at *1, *8 (Tenn. June 8, 2018). As we have concluded before, "[t]he ABA Standards 'are not designed to propose a specific sanction for each of the myriad of fact patterns in cases of lawyer misconduct,' and they are 'not analogous to criminal determinate sentences.'" *Maddux*, 409 S.W.3d at 624 (quoting ABA Standards, Theoretical Framework). Here, assuming that the hearing panel considered disbarment as the presumptive sanction under ABA Standard 4.11, it does not follow that a recommendation of suspension would be improper. The hearing panel was at liberty to recommend suspension as the proper sanction for Mr. Sheppard upon adequate consideration of aggravating and mitigating factors and of sanctions imposed in similar cases. As noted in *Daniel*, "[a]ny other interpretation would be incongruous with using the ABA Standards as flexible guideposts." 2018 WL 2750058 at *8.

Hearing panels should "precisely and clearly identify all ABA Standards that are relied upon for guidance in determining an appropriate sanction." *Id.* This is the best practice and assists the parties and this Court in its review. Here, however, the ABA Standards relied on by the hearing panel are readily ascertainable from the record.

On appeal, the chancery court found that both ABA Standards 4.11 and 4.12 applied based on the facts. This was not error. ABA Standard 4.12 applies to Mr. Sheppard's mismanagement of client funds, where the hearing panel found that he "knowingly violated Rule 1.15 . . . in that certain client funds were improperly withdrawn or transferred to cover other expenses." *See* ABA Standard 4.12 (applicable when "a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client"). In contrast with ABA Standard 4.12, disbarment under ABA Standard 4.11 is proper in instances where an attorney "knowingly converts" client property. Although the hearing panel did not expressly conclude that Mr. Sheppard converted client funds, its findings of fact may reasonably

- 11 -

support the chancery court's conclusion that both ABA Standards applied. We therefore find no error in the chancery court's conclusion that both ABA Standards 4.11 and 4.12 applied.

The Board also contends that disbarment under ABA Standard 4.11 rather than suspension is the appropriate sanction because the chancery court found that Mr. Sheppard's actions resulted in harm to Utica. We disagree. Both ABA Standards 4.11 (disbarment) and 4.12 (suspension) apply when there is a finding that an attorney's conduct "causes injury or potential injury to a client." *See* ABA Standards 4.11, 4.12. Therefore, the fact that there is an injury to the client does not necessitate imposing the sanction of disbarment rather than suspension.

*Aggravating and Mitigating Factors*

The ABA Standards list multiple aggravating and mitigating factors for tribunals to consider in devising the appropriate sanction once a lawyer's misconduct is established. ABA Standard 9.1. These factors are, however, "illustrative rather than exclusive," and the hearing panel may consider other factors in its discretion. *Cowan*, 388 S.W.3d at 268 (quoting *Lockett v. Bd. of Prof'l Responsibility*, 380 S.W.3d 19, 28 (Tenn. 2012)). "[T]he purpose of the ABA Standards is to 'promote . . . consideration of *all* factors relevant to imposing the appropriate level of sanction in an individual case.'" *Lockett*, 380 S.W.3d at 28 (quoting ABA Standard 1.3) (emphasis added).

The Board argues that the hearing panel should have found, as did the chancery court, that substantial and material evidence established the aggravating factors of dishonesty, selfish motive, and substantial experience in the practice of law. The Board also contends that the hearing panel erred in considering the more lenient sanction imposed on Mr. Craft as a mitigating factor and that the chancery court erred in affirming the mitigating factors found by the hearing panel.

The hearing panel found no evidence of any aggravating factor. It stated, nonetheless, that Mr. Sheppard "knowingly misled or misrepresented to at least one client the status of the client's trust funds." This finding, however, does not translate necessarily into a finding of a dishonest or selfish motive behind Mr. Sheppard's mismanagement of client funds. This aggravating factor particularly hinges on the credibility of Mr. Sheppard and his character witnesses, which the hearing panel directly assessed. Mr. Sheppard denied intentionally misleading Utica, and two witnesses attested to his reputation for veracity and hard work on behalf of his clients. The hearing panel noted that his knowing misconduct was "balanced by evidence that, on one occasion, when [he] discovered the trust funds were inadequate to pay a client the proceeds due them, he immediately took action . . . to 'cover' the unauthorized misuse." The hearing panel's finding that Mr. Sheppard's misconduct did not result from a dishonest or selfish motive is supported by substantial and material evidence.

As to experience in the practice of law, the hearing panel found "significant proof" that Mr. Sheppard was "inexperienced in Law Office Management or accounting systems." While Mr. Sheppard obtained his law degree in 1982, he did not begin practicing law until 1999. He had no experience managing a trust account when he began practicing law six years later with Craft & Sheppard. Mr. Sheppard's financial reports and "accounting" methods tend to indicate that he was neither experienced nor sophisticated in office management. The hearing panel's conclusion is supported by substantial and material evidence and is not arbitrary, capricious, or characterized by abuse of discretion.

The chancery court, however, determined that substantial and material evidence supported a finding of dishonest and selfish motive and of substantial experience in the practice of law on the part of Mr. Sheppard. While a trial court may consider additional aggravating or mitigating factors to reverse or modify a hearing panel's decision, it may do so only if one of the bases enumerated in Tennessee Supreme Court Rule 9, section 1.3, is present. *Lockett*, 380 S.W.3d at 23. The "new" aggravating factors found by the chancery court directly contradict the hearing panel's express findings that there was no proof of dishonesty or selfish motive on the part of Mr. Sheppard and significant proof of his inexperience in law office management. Having determined that the hearing panel's findings are supported by the evidence, we conclude that the chancery court erred by impermissibly reweighing the evidence. *See Mabry v. Bd. of Prof'l Responsibility*, 458 S.W.3d 900, 903 (Tenn. 2014) ("[T]he trial court does not substitute its judgment for that of the hearing panel as to the weight of the evidence.").

The hearing panel also considered, as a mitigating factor, the more lenient sanction of public censure given to Mr. Craft. We reject the Board's contention that considering the sanction imposed on Mr. Craft was improper. As we have observed, the aggravating and mitigating factors included in the ABA Standards are "illustrative rather than exclusive," *Cowan*, 388 S.W.3d at 268, and "the purpose of the ABA Standards is to 'promote . . . consideration of all factors relevant to imposing the appropriate level of sanction in an individual case,'" *Lockett*, 380 S.W.3d at 28. Mr. Sheppard's matter came to the hearing panel after the Board had issued a public censure to Mr. Craft, based on its finding that Mr. Craft had not personally removed or received client funds from the firm's trust account. Mr. Craft and Mr. Sheppard had been law partners for eight years. Both attorneys had access to the firm's bank accounts, bank records, and client funds. Some evidence shows that Mr. Craft partly directed Mr. Sheppard's control of firm finances by supplying him with settlement agreements and other financial information. Mr. Craft testified about his level of involvement with the firm's finances, but the hearing panel did not find his testimony credible. Under these circumstances, we cannot say that either the hearing panel or the chancery court abused its discretion by considering the lighter sanction imposed on Mr. Craft as a mitigating factor.

- 13 -

Given the hearing panel's findings that there were no aggravating factors and numerous mitigating factors, including the lighter sanction imposed on Mr. Craft, the hearing panel could have appropriately considered either disbarment or suspension as the presumptive sanction. We conclude that the hearing panel did not abuse its discretion in recommending that Mr. Sheppard be suspended, and that the decision is supported by material and substantial evidence in the record.

*Appropriateness of Discipline*

We now consider the sanctions imposed by this Court in factually similar cases to determine whether the hearing panel abused its discretion in recommending that Mr. Sheppard be suspended rather than disbarred. The Board contends that this Court has determined that disbarment is appropriate in cases involving mismanagement of client funds. Mr. Sheppard counters that this Court's imposition of disbarment in certain cases does not prevent a hearing panel from recommending a suspension in a case involving misuse of trust account funds. Under the abuse of discretion standard, the ruling of the hearing panel "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *Sallee*, 469 S.W.3d at 42 (internal citations omitted).

This Court has affirmed suspension as the proper sanction in multiple cases involving mismanagement of client funds. *See, e.g., Napolitano v. Bd. of Prof'l Responsibility*, 535 S.W.3d 481, 505 (Tenn. 2017) (affirming five-year suspension of attorney who had converted client funds and lied under oath); *Maddux*, 409 S.W.3d at 615 (affirming nine-month suspension of attorney who had been previously suspended for misconduct involving mishandling of client funds); *Threadgill v. Bd. of Prof'l Responsibility*, 299 S.W.3d 792, 809 (Tenn. 2009) (affirming year-long suspension of attorney with a pattern of knowingly converting client funds by "pocketing the entire amount of a settlement or judgment without informing the client the case had been resolved"); *Nevin v. Bd. of Prof'l Responsibility*, 271 S.W.3d 648, 650 (Tenn. 2008) (affirming six-month suspension of attorney who mishandled client funds but blamed others for his actions and was unremorseful); *Milligan v. Bd. of Prof'l Responsibility*, 166 S.W.3d 665, 667 (Tenn. 2005) (modifying sanction from disbarment to two-year suspension where attorney had repeatedly overdrawn client trust accounts and used client funds for personal purposes). After a careful review of the record, we consider Mr. Sheppard's misconduct to be less egregious than that of the attorneys disciplined in those cases. Against this background, the sixty-day suspension imposed by the hearing panel is not arbitrary, capricious, or an abuse of discretion by the hearing panel.

*Board of Professional Responsibility v. Allison*, 284 S.W.3d 316 (Tenn. 2009), involved similar facts and is particularly instructive. In *Allison*, the hearing panel recommended a sixty-day suspension for attorney James T. Allison, but the trial court modified the sanction to a public censure. *Id.* at 319. After reviewing the record, we agreed with the hearing panel's findings that Mr. Allison had "commingled his personal

funds with client funds, paid personal bills out of his trust account, failed to maintain proper trust account records, and failed to timely respond to Board inquiries." We noted that Mr. Allison had previously received a public reprimand for "commingling his personal funds with trust account funds and for paying personal expenses from his trust account." This Court reversed the trial court's modification of the sanction, concluding that the sixty-day suspension was warranted under the circumstances. *Id.*

Like Mr. Sheppard, Mr. Allison had a "good reputation, and it was not proven that his conduct had a selfish or dishonest motive." *Id.* at 327. Unlike Mr. Sheppard, Mr. Allison had substantial experience in the practice of law, his violations displayed a pattern of conduct, and he had previously received a reprimand for the same type of misconduct. *Id.* This Court affirmed the sixty-day suspension recommended for Mr. Allison by the hearing panel. *Id.* at 328. Considering the similarities and differences between Mr. Sheppard's misconduct and that of Mr. Allison, we find no error in the hearing panel's recommendation to suspend Mr. Sheppard for sixty days and place him on probation for twenty-four months thereafter.

The Board's reliance on *Skouteris v. Board of Professional Responsibility*, 430 S.W.3d 359 (Tenn. 2014), and *Rayburn v. Board of Professional Responsibility*, 300 S.W.3d 654 (Tenn. 2009), is misplaced. While these two cases involved mishandling of client funds, they are distinguishable in other important respects. In *Rayburn*, disbarment was appropriate where the aggravating factors were the attorney's "years of practice experience, pattern of misconduct and neglect, dishonesty with his clients, and delay and obstruction of the disciplinary proceedings." 300 S.W.3d at 664. Here, the hearing panel found no aggravating factors. As to *Skouteris*, the Board is correct that the attorney's misconduct involved the failure to keep sufficient funds in a trust account. The hearing panel in *Skouteris*, however, concluded that the attorney had engaged in many acts of conversion for personal benefit that caused actual client injury and failed to show an understanding that his conduct was wrong. 430 S.W.3d at 371. Both cases involved express findings of actual injury to clients and multiple aggravating factors, none of which are present here.

Mr. Sheppard's knowing mismanagement of client funds is a serious ethical violation that merits the imposition of discipline by this Court. A different hearing panel might have imposed a harsher sanction. Under our deferential standard of review, we conclude that substantial and material evidence in the record supports the hearing panel's decision to suspend rather than disbar Mr. Sheppard, and that the decision is not arbitrary, capricious, or characterized by an abuse of discretion. Under that same standard of review, the trial court erred in making new factual findings and substituting its judgment for that of the hearing panel, without any of the bases enumerated in Tennessee Supreme Court Rule 9, section 1.3.

**III.**

We hold that the hearing panel's decision was fully supported by substantial and material evidence and was not arbitrary, capricious, or an abuse of discretion. The chancery court therefore erred in modifying the sanction imposed by the hearing panel.

We reverse the chancery court's judgment and affirm the hearing panel's decision suspending Mr. Sheppard from the practice of law for sixty days, followed by two years of probation under the supervision of a practice monitor, and requiring that he take fifteen hours of continuing legal education on law office management and trust accounting procedures. We tax the costs of this appeal to the Board of Professional Responsibility of the Supreme Court of Tennessee.

_____
SHARON G. LEE, JUSTICE