IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
May 30, 2019 Session

## JENNIFER ELIZABETH MEEHAN v. BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

**Direct Appeal from the Circuit Court for Davidson County**
**No. 17C3204   Robert E. Lee Davies, Senior Judge**

———————————————

**No. M2018-01561-SC-R3-BP**

———————————————

A Board of Professional Responsibility hearing panel found that an attorney should be disbarred after she was convicted of bank fraud. On appeal, the circuit court held that the hearing panel's decision was arbitrary and imposed a five-year suspension. We reverse. The hearing panel's decision was supported by substantial and material evidence and was neither arbitrary nor an abuse of discretion.

**Tenn. Sup. Ct. R. 9, § 33.1(d); Judgment of the Circuit Court Reversed;**
**Decision of the Hearing Panel Affirmed**

SHARON G. LEE, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Jerry Morgan, Brentwood, Tennessee, for the appellant, Board of Professional Responsibility.

Philip N. Elbert and Benjamin C. Aaron, Nashville, Tennessee, for the appellee, Jennifer Elizabeth Meehan.

# OPINION

## I.

## Background and Disciplinary Proceedings

### *Criminal Conviction*

Jennifer Elizabeth Meehan, a licensed Tennessee attorney, mishandled funds belonging to Gamma Phi Beta sorority at the University of Alabama. Ms. Meehan pleaded guilty to bank fraud, 18 U.S.C. § 1344 (2012), in the United States District Court for the Northern District of Alabama.

Ms. Meehan, while attending the University of Alabama, was a member of Gamma Phi Beta sorority. After graduating, Ms. Meehan was an active sorority alumna, serving as president of the sorority's housing board. As board president, Ms. Meehan oversaw the construction and furnishing of a new sorority house. Her responsibilities included coordinating the selection and purchase of furniture and other items for the house.

Ms. Meehan arranged to buy furniture for the new sorority house through Ai Corporate Interiors, LLC in Birmingham, Alabama. Ai Corporate Interiors, an authorized dealer of furniture made by Teknion, LLC, gave Ms. Meehan a template that allowed her to generate invoices on her computer for orders of Teknion furniture. Ms. Meehan prepared and submitted invoices for furniture expenditures to Greek Resource Services, Inc., which served as manager and custodian of the sorority's funds, including funds for furnishing the new sorority house. Under the sorority's agreement with Greek Resource Services, the sorority could have no bank accounts other than the accounts managed by Greek Resource Services.

In September 2014, Ms. Meehan embarked on a scheme to obtain sorority funds from Greek Resource Services by submitting false furniture invoices and using a bank checking account opened under a fictitious name. She began by creating an invoice from "Technion, LLC" (Technion is a misspelling of Teknion, the furniture supplier's name) with an address of P.O. Box 251, Villa Rica, Georgia. Ms. Meehan had rented this post office box as a part of her plan. She submitted an $88,311.60 invoice to Greek Resource Services for sorority house furniture that she had not ordered.

A few days later, Ms. Meehan opened a business checking account at First Citizens Bank & Trust Company in Carnesville, Georgia, under the "Technion" business name and listed the Villa Rica, Georgia post office box as the account's address. To open the account, Ms. Meehan provided the bank with a false Employer Identification Number and a fictitious corporate resolution identifying her as the Chief Financial Officer.

Neither the sorority housing board nor Greek Resource Services knew about the First Citizens Bank account. Later that day, Ms. Meehan went to a different branch of First Citizens Bank to deposit a check received from Greek Resource Services in the invoiced amount of $88,311.60. The check, issued by Greek Resource Services from the sorority's account, was payable to "Technion Accounts Receivable."

In October 2014, First Citizens Bank notified Ms. Meehan that the Employer Identification Number she had provided was incorrect. She then obtained and provided to the bank Teknion's correct Employer Identification Number and address in Mount Laurel, New Jersey. After receiving this information, the bank changed the name on the account to Teknion, LLC and the address to Teknion's New Jersey address.

In November 2014, Ms. Meehan created and submitted to Greek Resource Services a second false invoice payable to "Technion, LLC" for a furniture order in the amount of $286,740. Three days later, Greek Resource Services issued a check for the invoiced amount. Ms. Meehan deposited the check at a First Citizens Bank branch in Buckhead, Georgia. With this deposit, the balance in the account she had opened was more than $375,000.

In January 2015, Ms. Meehan went to a First Citizens Bank branch in Anderson, South Carolina, and wired $175,000 from the Teknion account to her personal business account at Bank of America. She also changed the address on the First Citizens Bank account from Teknion's New Jersey address to a street address in Villa Rica, Georgia. In March 2015, Ms. Meehan obtained a cashier's check for $175,000 from her personal business account at Bank of America, payable to Ai Corporate Interiors for furniture that she had purchased for the sorority house. Ms. Meehan closed the Teknion account later that month after being notified by First Citizens Bank that there was a problem with the account. She arranged for the remaining funds in the account to be transferred to Greek Resource Services for deposit into the sorority's account.

In June 2015, Ms. Meehan was indicted in the United States District Court for the Northern District of Alabama on eight felony charges: three counts of wire fraud, one count of bank fraud, and four counts of money laundering. In July 2016, she pleaded guilty to one count of bank fraud in exchange for the dismissal of the other seven counts of the indictment. As part of the plea, she agreed to pay $34,815 to Greek Resource Services for an audit to account for the funds deposited into First Citizens Bank and to forfeit $234,648 in cash belonging to the sorority.[1] In November 2016, the federal district

---

[1] Ms. Meehan accumulated $234,648 from Greek Resource Services for payment of various sorority-related expenses from 2011 to June 2015. The funds Ms. Meehan received often exceeded expenses, and Ms. Meehan retained the difference in cash in a box at her home.

court sentenced Ms. Meehan to prison for six months, followed by forty months of supervised release, together with restitution of $34,815 and forfeiture of $234,648.

*Disciplinary Actions*

Ms. Meehan, while engaging in bank fraud, was a licensed attorney in Tennessee, South Carolina, and Texas. Ms. Meehan practiced law in Tennessee for three years. She worked two years as a staff attorney for the Tennessee Board for Licensing Contractors in 2005 and 2006, and then as a contract attorney for a Nashville firm for another year. In 2008, she moved to South Carolina, where she was licensed to practice law and established a small practice focusing mainly on health care compliance and estate matters. In 2010, Ms. Meehan became licensed in Texas but never practiced there.

Ms. Meehan reported her guilty plea to the licensing board in each state. In March 2017, the Texas Supreme Court accepted Ms. Meehan's surrender of her license in lieu of disciplinary action. In July 2015, the South Carolina Supreme Court placed Ms. Meehan on interim suspension. In January 2019, the South Carolina Supreme Court disbarred Ms. Meehan based on her failure to report that she had surrendered her license in Texas in lieu of discipline, as required by South Carolina's Lawyer Disciplinary Enforcement Rules. The South Carolina Supreme Court relied on South Carolina's reciprocal discipline rule and the Texas disciplinary rule requiring that the Texas surrender be treated as disbarment for all purposes. Ms. Meehan petitioned for rehearing of her disbarment. The petition was still pending when briefs were filed in this case.

In August 2016, this Court summarily suspended Ms. Meehan from the practice of law in Tennessee based on the certified copy of Ms. Meehan's plea agreement to bank fraud submitted by the Board of Professional Responsibility. *In re Jennifer Elizabeth Meehan*, No. M2016-01606-SC-BAR-BP (Tenn. Aug. 10, 2016) (Order of Enforcement). The Court referred the matter to the Board to initiate formal proceedings to determine the appropriate final discipline.[2] *Id.*

The Board began formal proceedings, and a hearing panel set the disciplinary hearing for January 11, 2017. A week before the hearing, Ms. Meehan moved to continue the hearing until South Carolina concluded its disciplinary proceedings or until January 25, 2017. The hearing panel continued the hearing to January 25, 2017. Yet the day before the January 25 hearing, Ms. Meehan filed an emergency motion for continuance because she had voluntarily reported to prison on January 17, 2017. At the January 25,

---

[2] Under Tennessee Supreme Court Rule 9, section 22.3, upon the filing of adequate proof that an attorney has entered a guilty plea in a criminal proceeding, "the Court shall, in addition to suspending the attorney[,] . . . refer the matter to the Board for the institution of a formal proceeding before a hearing panel in which the sole issue to be determined shall be the extent of the final discipline to be imposed." Tenn. Sup. Ct. R. 9, § 22.3(a), (c).

2017 hearing, the hearing panel denied Ms. Meehan's emergency motion and allowed the Board to present its proof. The Board introduced Ms. Meehan's 2016 plea agreement in the federal court case, her conditional guilty plea in a 2011 Tennessee disciplinary matter, and the public censure arising out of the disciplinary matter. The hearing panel allowed Ms. Meehan to respond to the Board's evidence after she was provided a copy of the hearing transcript.

Ms. Meehan responded, arguing that multiple mitigating factors under Standard 9.32 of the American Bar Association's Standards for Imposing Lawyer Sanctions (the ABA Standards) applied. Her response included nineteen letters that had been filed with the federal district court vouching for Ms. Meehan's good character. Ms. Meehan renewed her motion to continue the hearing until after the South Carolina disciplinary proceedings ended or until after her release from prison on June 16, 2017. The hearing panel continued the hearing to July 31, 2017.

Meanwhile, in March 2017, Ms. Meehan petitioned this Court to allow her to surrender her law license. *In re Jennifer Elizabeth Meehan*, No. M2017-00498-SC-BAR-SUR (Tenn. Mar. 23, 2017) (Order). The Court dismissed her petition without prejudice, citing her ongoing suspension and pending proceedings for final discipline before the hearing panel. *Id.*

The hearing panel, at the start of the July 31, 2017 hearing, denied Ms. Meehan's motions to dismiss the disciplinary proceedings for lack of jurisdiction and to continue the hearing until the South Carolina disciplinary proceedings concluded. The Board introduced no additional evidence.

Ms. Meehan testified that she opened an account at the First Citizens Bank branch in Carnesville, Georgia, because that branch was on the route she regularly traveled between South Carolina and Alabama while overseeing the construction of the new sorority house. She admitted that she provided the bank with a fictitious Teknion corporate resolution listing her as its Chief Financial Officer and with a false Employer Identification Number. Ms. Meehan explained that she had received the fictitious corporate resolution and Employer Identification Number from Ai Corporate Interiors. Ms. Meehan said that she opened the bank account because Ai Corporate Interiors had offered the sorority a discount if she opened an account in the name of Teknion and deposited funds in the account in advance of furniture orders. She admitted that she had no authority from Teknion to open a bank account in its name or to use its Employer Identification Number. Ms. Meehan said that she did not sign the corporate resolution, but admitted that the resolution contained a signature purporting to be hers. She admitted that she submitted that false signature to the bank. Ms. Meehan denied knowing that the resolution identified her as Teknion's Chief Financial Officer.

Ms. Meehan conceded that she submitted false furniture invoices to Greek Resource Services for nearly $375,000, explaining that the sorority had planned to spend this amount on furniture from Teknion. Ms. Meehan said she submitted the false invoices because the furniture order was not yet finalized and she needed to have the funds in the bank when she was ready to make the purchase. Ultimately, the furniture order was only for $175,000, much less than the funds Ms. Meehan obtained from Greek Resource Services with the false invoices.

Ms. Meehan testified that she transferred $175,000 from the First Citizens Bank Teknion account to her personal business bank account in January 2015 because of her concern that Teknion would seize the funds after she provided First Citizens Bank with Teknion's correct Employer Identification Number. In March 2015, after First Citizens Bank notified her about a problem with the account, Ms. Meehan closed the account because she was concerned that Teknion would try to take the remaining funds. She returned the rest of the sorority's funds to Greek Resource Services, but admitted that in making these various transactions, she had "defrauded the bank in order to attempt to disburse funds."

The hearing panel questioned Ms. Meehan about a 2011 public censure she had received based on her preparation and use of a resume that misrepresented her credentials. The resume falsely stated that she had clerked for a federal district judge when she had only completed a judicial externship. The resume also incorrectly represented that she had published a law review article, but Ms. Meehan had only submitted the article for publication. In addition, Ms. Meehan affirmed in writing during the 2011 disciplinary proceedings that the article had been published. Ms. Meehan admitted that she had submitted the resume containing false information each time she applied for a job from 2003 to 2006. The misrepresentation was discovered after a prospective employer attempted to verify Ms. Meehan's service as a judicial law clerk. Ms. Meehan also admitted that she falsely represented to the Board in writing that the law review article listed on her resume had been published. The hearing panel expressed concern about Ms. Meehan engaging in the dishonest conduct underlying her conviction just three years after her public censure for making false statements.

The hearing panel also asked Ms. Meehan about the history of alcoholism mentioned in the filings in her federal bank fraud case. She testified that she had not consumed alcohol for over two years and that she "took a class" while in prison, as ordered by the federal district judge. Ms. Meehan also stated that she was currently seeing a counselor and would soon be assessed for alcoholism treatment.

Nine witnesses, including Ms. Meehan's lawyer in the South Carolina disciplinary proceedings, her brother, professional colleagues, former co-workers, friends, and her mental health counselor, testified about Ms. Meehan's good character, honesty, reputation, and professional competency.

Before the hearing panel issued its decision, Ms. Meehan filed a brief requesting that the hearing panel accept the surrender of her Tennessee law license instead of imposing discipline. Ms. Meehan asserted that this Court's decision to deny her March 2017 petition to surrender her law license was unconstitutional.

In September 2017, the hearing panel issued its decision imposing disbarment. The hearing panel applied ABA Standards 5.1 and 5.11 based on Ms. Meehan's bank fraud conviction, a violation of 18 U.S.C. § 1344.[3] The commission of bank fraud violated the duty to maintain personal integrity owed to the public.[4] ABA Standard 5.11 provides that disbarment is the presumptive sanction for this type of violation.[5]

The hearing panel found that two aggravating and five mitigating factors applied. The first aggravating factor was Ms. Meehan's prior public censure for making false statements in a resume and during disciplinary proceedings. The second aggravating factor was her experience of more than ten years practicing law, which included experience as a government attorney, private contract attorney, and solo practitioner. *See* ABA Standard 9.22. The five mitigating factors that applied were personal and emotional problems, voluntary disclosure during disciplinary proceedings, imposition of other

---

[3] Under 18 U.S.C. § 1344,

> Whoever knowingly executes, or attempts to execute, a scheme or artifice **(1)** to defraud a financial institution; or **(2)** to obtain any of the moneys, funds, . . . or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises . . . shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344 (2012).

[4] ABA Standards 5.0 and 5.1 provide:

5.0 Violations of Duties Owed to the Public

5.1 Failure to Maintain Personal Integrity

> Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, deceit, or misrepresentation[.]

[5] ABA Standard 5.11 provides, in part, that "[d]isbarment is generally appropriate when . . . a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft . . . [.]"

penalties, good character or reputation, and remorse. *See* ABA Standard 9.32. The hearing panel considered witness testimony about Ms. Meehan's volunteer activities, good character, honesty, and competence as an attorney, and subsumed it under the mitigating factor of good character or reputation.

The hearing panel declined to consider as mitigating factors Ms. Meehan's willingness to be mentored by a senior attorney, her assertion that her misconduct caused no harm, and her asserted timely good-faith effort to make restitution. In addition, while the hearing panel found that Ms. Meehan did not act for her own personal gain, it noted that whether she exhibited a dishonest or selfish motive was a close question. As a result, the hearing panel did not apply the presence or absence of a dishonest or selfish motive as either an aggravating or a mitigating factor.

In the end, the hearing panel concluded that although Ms. Meehan intended to help her sorority, she had a specific intent to defraud and that the potential or actual injury resulting from her misconduct included harm to the reputation of the legal profession. Finding that the balance of the aggravating and mitigating factors did not justify departing from the presumptive sanction under ABA Standard 5.11, the hearing panel recommended that Ms. Meehan be disbarred.

*Trial Court Review*

Ms. Meehan sought review in the Davidson County Circuit Court under Tennessee Supreme Court Rule 9, section 33.1(a). She contended that the hearing panel made arbitrary factual findings, incorrectly applied aggravating and mitigating factors, improperly refused to allow her to surrender her law license, was not impartial, and failed to consider disciplinary cases showing that suspension was the proper sanction for her misconduct.

Based on its review of the record and counsel's argument, the trial court affirmed most of the hearing panel's findings of fact and conclusions of law. The trial court ruled that the evidence did not preponderate against the findings of fact made by the hearing panel—including Ms. Meehan's intent to deceive. It affirmed Ms. Meehan's prior discipline as an aggravating factor, as well as the five mitigating factors applied by the hearing panel—personal and emotional problems, voluntary disclosure, imposition of other penalties, good character or reputation, and remorse. The trial court also agreed with the hearing panel's decision to reject as mitigating factors Ms. Meehan's willingness to be mentored and a lack of harm. Although the hearing panel's decision did not address Ms. Meehan's post-hearing request to surrender her law license, the trial court found no error in the hearing panel's implicit refusal of Ms. Meehan's request. Last, the trial court found no merit in Ms. Meehan's challenges to the hearing panel's impartiality and jurisdiction.

The trial court disagreed with the hearing panel about the application of one aggravating and two mitigating factors. First, the trial court held that Ms. Meehan's experience in the practice of law was not an aggravating factor, concluding that her legal experience had little relevance to the crime of bank fraud. Next, the trial court determined that Ms. Meehan's lack of dishonest or selfish motive was a mitigating factor because she had acted for the benefit of the sorority. Finally, the trial court ruled that Ms. Meehan's timely good-faith effort to make restitution was a mitigating factor because Ms. Meehan returned funds to Greek Resource Services before her indictment. After making these findings, the trial court reviewed other disciplinary cases to determine whether disbarment was consistent with the sanctions imposed in those cases. The trial court found that, to be consistent with previous sanctions, the appropriate suspension period ranged from four to five years.

Based on its analysis of sanctions imposed in similar cases and the aggravating and mitigating factors, the trial court held that the hearing panel's decision to impose disbarment was arbitrary and modified the sanction to a five-year suspension, retroactive to Ms. Meehan's 2016 summary suspension.

The Board appealed to this Court under Tennessee Supreme Court Rule 9, section 33.1(d).

## II.

## Analysis

The issue here is whether Ms. Meehan should be disbarred as recommended by the hearing panel or suspended for five years as found by the trial court. In deciding this question, we must determine whether the hearing panel's decision was arbitrary, characterized by an abuse of discretion, or not supported by substantial and material evidence.

The Board argues that the trial court improperly substituted its judgment for that of the hearing panel as to applicable aggravating and mitigating factors and erred in finding disbarment arbitrary based on its review of sanctions imposed on factually similar cases. Ms. Meehan responds that the trial court properly modified the sanction to suspension because of the facts of the case, applicable aggravating and mitigating factors, and sanctions imposed in other cases.[6]

---

[6] Ms. Meehan also argued that if disbarred, she should receive credit for the length of time of her summary suspension. This issue was not raised in the trial court and is waived. *See Bd. of Prof'l Responsibility v. Reguli*, 489 S.W.3d 408, 426 (Tenn. 2015) (explaining that issues not raised below are waived on appeal).

Our analysis is guided by our standard of review. This Court has the "inherent power" and "fundamental right" to regulate the practice of law in Tennessee. *Bd. of Prof'l Responsibility v. Parrish*, 556 S.W.3d 153, 162 (Tenn. 2018) (quoting *Bd. of Prof'l Responsibility v. Allison*, 284 S.W.3d 316, 321 (Tenn. 2009)) (internal quotation marks omitted), *cert. denied*, 139 S. Ct. 1216 (2019). We review disciplinary decisions and bear the ultimate responsibility for determining the appropriate sanction for the violation of this state's rules of professional conduct. *Id.* (citing *Garland v. Bd. of Prof'l Responsibility*, 536 S.W.3d 811, 816 (Tenn. 2017); *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 612 (Tenn. 2010)). We apply the same standard of review for a disciplinary decision as that applied by the trial court. *Bd. of Prof'l Responsibility v. Reguli*, 489 S.W.3d 408, 417 (Tenn. 2015) (citing *Moncier v. Bd. of Prof'l Responsibility*, 406 S.W.3d 139, 150 (Tenn. 2013)).

A trial court reviews a hearing panel's judgment "on the transcript of the evidence before the hearing panel and its findings and judgment." Tenn. Sup. Ct. R. 9, § 33.1(b) (2014). The trial court may reverse or modify a hearing panel's decision only when the party that sought review was prejudiced because the hearing panel's findings, inferences, conclusions, or decisions were:

> (1) in violation of constitutional or statutory provisions; (2) in excess of the hearing panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

*Id.*; *Long v. Bd. of Prof'l Responsibility*, 435 S.W.3d 174, 178 (Tenn. 2014). A decision is arbitrary or capricious if it "'is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion.'" *Hughes v. Bd. of Prof'l Responsibility*, 259 S.W.3d 631, 641 (Tenn. 2008) (quoting *City of Memphis v. Civ. Serv. Comm'n*, 216 S.W.3d 311, 316 (Tenn. 2007)). A hearing panel abuses its discretion when it "appl[ies] an incorrect legal standard, or reach[es] a decision which is against logic or reasoning that causes an injustice to the party complaining." *Reguli*, 489 S.W.3d at 418 (quoting *Sallee v. Bd. of Prof'l Responsibility*, 469 S.W.3d 18, 42 (Tenn. 2015)). The relevant inquiry in determining whether a hearing panel's decision is supported by substantial and material evidence is "whether the evidence 'furnishes a reasonably sound factual basis for the decision being reviewed.'" *Sallee*, 469 S.W.3d at 36 (quoting *Sneed*, 301 S.W.3d at 612). A trial court "shall not substitute its judgment for that of the hearing panel as to the weight of the evidence on questions of fact." Tenn. Sup. Ct. R. 9, § 33.1(b). For that reason, "where reasonable minds can disagree over the propriety of a hearing panel's decision, we will uphold the ruling." *Bd. of Prof'l Responsibility v. Sheppard*, 556 S.W.3d 139, 146 (Tenn. 2018) (citing *Sallee*, 469 S.W.3d at 42).

*Presumptive Sanction*

After a hearing panel finds one or more grounds for discipline, it must consider the applicable ABA Standards to determine the appropriate sanction for the attorney's misconduct. Tenn. Sup. Ct. R. 9, § 15.4(a); *Sheppard*, 556 S.W.3d at 147. This two-step process involves identifying the appropriate presumptive sanction under the ABA Standards and considering whether the presumptive sanction should be increased or decreased based on any aggravating and mitigating factors. *Sheppard*, 556 S.W.3d at 147 (quoting *Bd. of Prof'l Responsibility v. Cowan*, 388 S.W.3d 264, 268 (Tenn. 2012)). With no aggravating or mitigating factors, the presumptive sanction applies. *Id.* (citing *Talley v. Bd. of Prof'l Responsibility*, 358 S.W.3d 185, 194 (Tenn. 2011)).

The hearing panel and the trial court correctly applied ABA Standards 5.1 and 5.11. ABA Standard 5.1 applies in cases involving criminal acts that reflect adversely on an attorney's "honesty, trustworthiness, or fitness as a lawyer" or "conduct involving dishonesty, fraud, deceit, or misrepresentation." Thus, under Standard 5.1, Ms. Meehan's bank fraud conviction is a breach of the duty she owed to the public to maintain personal integrity, and disbarment is the presumptive sanction under ABA Standard 5.11.

*Aggravating and Mitigating Factors*

We now review the applicable aggravating and mitigating factors to determine whether these factors merit departure from the presumptive sanction of disbarment. The ABA Standards list multiple aggravating[7] and mitigating[8] factors to consider in determining the appropriate sanction for an attorney's misconduct. A hearing panel, however, may consider other factors. *Sheppard*, 556 S.W.3d at 149 (quoting *Cowan*, 388 S.W.3d at 268). Indeed, "the purpose of the ABA Standards is to 'promote . . . consideration of *all factors* relevant to imposing the appropriate level of sanction in an individual case.'" *Lockett v. Bd. of Prof'l Responsibility*, 380 S.W.3d 19, 28 (Tenn. 2012) (quoting ABA Standard 1.3).

---

[7] ABA Standard 9.22 lists aggravating factors that include prior disciplinary offenses; dishonest or selfish motive; a pattern of misconduct; multiple offenses; bad-faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; submission of false evidence, false statements, or other deceptive practices during the disciplinary process; refusal to acknowledge wrongful nature of conduct; substantial experience in the practice of law; indifference to making restitution; and illegal conduct, including that involving the use of controlled substances.

[8] ABA Standard 9.32 lists mitigating factors that include absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith effort to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical disability; documented mental disability or chemical dependency related to the misconduct; delay in disciplinary proceedings; imposition of other penalties or sanctions; remorse; and remoteness of prior offenses.

The Board argues that the trial court improperly substituted its judgment for that of the hearing panel in concluding that substantial experience in the practice of law did not apply as an aggravating factor. Ms. Meehan counters that the trial court properly excluded her experience in the practice of law. She contends that although she had been a licensed attorney since 2003, her actual experience in the practice of law was not substantial, and there was no connection between her law practice experience and her misconduct.

The hearing panel's finding that Ms. Meehan had substantial experience in the practice of law is supported by substantial and material evidence. Ms. Meehan, admitted to practice law in three states, first became a licensed attorney in 2003. She worked as a government attorney, with a private law firm, and as a solo practitioner. While practicing law for over ten years, Ms. Meehan developed expertise in the practice areas of estates and health care privacy law. *See In re Vogel*, 482 S.W.3d 520, 540 (Tenn. 2016) (concluding that substantial experience in the practice of law was aggravating factor where attorney had practiced law for nine years before his misconduct).

Ms. Meehan's substantial experience in the practice of law did not have to be directly related to her criminal conviction to be an aggravating factor. *See, e.g., In re Cope*, 549 S.W.3d 71, 75 (Tenn. 2018) (substantial experience factor applicable when attorney was convicted of insider trading); *Cowan*, 388 S.W.3d at 270–71 (substantial experience factor applicable when attorney pleaded guilty to willful tax evasion). The trial court, relying on a New Hampshire case, *In re Grew's Case*, 934 A.2d 537 (N.H. 2007), ruled otherwise. We respectfully disagree with the trial court on this issue.

There need not be a nexus between experience in the practice of law and criminal conduct because the public "expects lawyers to exhibit the highest standards of honesty and integrity, and lawyers have a duty not to engage in conduct involving dishonesty, fraud, or interference with the administration of justice." ABA Standards, Theoretical Framework. Lawyers owe other lawyers the duty of "maintaining the integrity of the [legal] profession." *Id.* This Court expressed the same view in a disciplinary proceeding over half a century ago:

> It is the duty of an attorney to uphold the honor of the profession of law; to be honest, to be of good conduct in the discharge of his duties to the Court, the public[,] and his clients. Attorneys are trusted by the community with the care of their lives, liberty[,] and property with no other security than personal honor and integrity.

*Schoolfield v. Tenn. Bar Ass'n*, 353 S.W.2d 401, 404 (Tenn. 1961); *see also Berke v. Chattanooga Bar Ass'n*, 436 S.W.2d 296, 306 (Tenn. Ct. App. 1968) ("In its broadest sense, the duty of a lawyer is to so regulate his life, public and private, as that no action of his shall reflect unfavorably upon his profession."). The hearing panel expressed

concern about the potential or actual injury resulting from Ms. Meehan's misconduct, including harm to the reputation of the profession. Thus, the hearing panel properly concluded that Ms. Meehan's substantial experience in the practice of law was an aggravating factor.

Turning to mitigating factors, the Board contends that the trial court erred in applying these two mitigating factors: a lack of dishonest or selfish motive and a timely good-faith effort to make restitution. Ms. Meehan argues that a lack of dishonest or selfish motive applied because the hearing panel found that her "unusual fact situation d[id] not fall within the class of cases to which this aggravating factor normally applies." Further, she argues that a timely good-faith effort to make restitution applied because she used some of the funds she obtained through false invoices to buy furniture for the sorority and returned the balance to Greek Resource Services before she was indicted.

We agree with the Board. The hearing panel considered the evidence presented, including undisputed proof of dishonest conduct, intentional fraud, and Ms. Meehan's motive to assist the sorority. The hearing panel concluded that it should not use a dishonest or selfish motive as an aggravating factor or the lack thereof as a mitigating factor. Contrary to the trial court's conclusion, the hearing panel did not have to make a determination one way or the other on all aggravating or mitigating factors listed in the ABA Standards. Rather, the hearing panel's task is to "consider the applicable provisions" of the ABA Standards in determining the appropriate sanction. Tenn. Sup. Ct. R. 9, § 15.4(a). The hearing panel noted that the lack of a motive for personal financial gain is not the same as a lack of selfish motive. Although the hearing panel found that Ms. Meehan was motivated by a desire to assist her sorority, her circumvention of the safeguards put in place to protect the assets of the sorority can be seen as selfish. The hearing panel also determined that the evidence conclusively established Ms. Meehan's dishonest conduct and intentional fraud, stating that she "set out on an elaborate scheme to obtain funds to which she was not entitled so that she might avoid the restrictions put in place by Greek Resource Services." The hearing panel's decision was supported by substantial and material evidence. The hearing panel did not abuse its discretion by not applying a lack of dishonest or selfish motive as a mitigating factor. Thus, the trial court erred by impermissibly reweighing the evidence. *See Mabry v. Bd. of Prof'l Responsibility*, 458 S.W.3d 900, 903 (Tenn. 2014) (citing *Allison*, 284 S.W.3d at 323) ("[T]he trial court does not substitute its judgment for that of the hearing panel as to the weight of the evidence.").

The trial court also erred in ruling that the hearing panel arbitrarily rejected as a mitigating factor a timely good-faith effort to make restitution. The hearing panel found that Ms. Meehan returned funds to Greek Resource Services before she learned about the criminal investigation. But the hearing panel also found, based on Ms. Meehan's testimony, that she returned the funds in the First Citizens Bank account because she was worried that Teknion might claim them—not to remedy the consequences of her earlier

fraud. *See* ABA Standard 9.32(d); *see also* ABA Standard 9.4(a) (stating that "forced or compelled" restitution should be neither aggravating nor mitigating). The hearing panel's decision on this factor was supported by substantial and material evidence. The hearing panel did not abuse its discretion by declining to apply a timely good-faith effort to make restitution as a mitigating factor.

In short, we find that the hearing panel's decision is supported by substantial and material evidence. The hearing panel did not abuse its discretion or act arbitrarily in applying the aggravating and mitigating factors.

*Sanctions in Similar Cases*

The Board contends that the trial court erred in modifying the hearing panel's decision based on the trial court's review of sanctions imposed in similar cases. Ms. Meehan responds that the hearing panel should have reviewed sanctions in similar cases, that the trial court did not err in doing so, and that the appropriate sanction for her misconduct was suspension.

Under Rule 9, a hearing panel is directed to consider the applicable provisions of the ABA Standards to determine the appropriate sanction in a particular case. Tenn. Sup. Ct. R. 9, § 15.4(a). There is no authority under Rule 9 for a hearing panel to base its recommended sanction on a review of sanctions imposed in similar cases. In addition, a trial court's authority to reverse or modify a hearing panel's decision is limited to the five grounds listed in Section 33.1(b). Inconsistency with sanctions in similar cases is not a listed ground. Thus, it was improper for the trial court to modify the hearing panel's decision based on grounds not authorized by Rule 9.

Ms. Meehan argues that this Court's opinions in *Napolitano v. Board of Professional Responsibility*, 535 S.W.3d 481 (Tenn. 2017) and in *In re James V. Barr, III*, No. 01501-9710-BP-00221 (Tenn. Oct. 22, 1997) (Order of Enforcement), suggest that suspension is the appropriate sanction for her misconduct. We disagree. *Napolitano* involved an attorney's violation of duties owed to a client and to the legal system. 535 S.W.3d at 488–94. Here, the misconduct is a felony conviction involving fraud. *See In re Cope*, 549 S.W.3d at 75 ("For purposes of our analysis, cases presenting similar circumstances as this case are those in which an attorney has been convicted of a felony.").

In *In re Barr*, a hearing panel recommended a five-year suspension for an attorney who had been convicted of bank fraud and perjury and had been previously disciplined. No. 01501-9710-BP-00221 (Tenn. Oct. 22, 1997) (Order of Enforcement). The hearing committee in *In re Barr*, however, recommended suspension under a different legal framework than the one applied by the hearing panel here. When Mr. Barr's case came before a hearing committee over twenty years ago, this Court's rules did not require

hearing committees to consider the ABA Standards in imposing a sanction, and the hearing committee made no reference to the ABA Standards.[9] Here, the hearing panel recommended that Ms. Meehan be disbarred, after identifying disbarment as the presumptive sanction under the ABA Standards and considering relevant aggravating and mitigating factors. In addition, Mr. Barr's case came to this Court in a different procedural posture. Neither party in that case appealed the hearing committee's recommendation to impose a five-year suspension; rather, the Board asked this Court to enforce the recommendation. *Id.* Here, the Board has appealed the trial court's order of suspension.

Ms. Meehan also argues that these cases support suspension as the proper discipline: *Board of Professional Responsibility v. Daniel*, 549 S.W.3d 90 (Tenn. 2018); *In re Walter Alan Rose*, No. M2016-01311-SC-BAR-BP (Tenn. Jan. 11, 2017) (Order of Enforcement); *Threadgill v. Board of Professional Responsibility*, 299 S.W.3d 792 (Tenn. 2009), *overruled by Lockett*, 380 S.W.3d at 28–29; and *Board of Professional Responsibility v. Maddux*, 148 S.W.3d 37 (Tenn. 2004). We are not persuaded. In *Daniel*, *Threadgill*, and *Maddux*, the disciplinary proceedings did not arise out of a felony conviction. *See Daniel*, 549 S.W.3d at 94 (misappropriating funds from the attorney's law firm); *Threadgill*, 299 S.W.3d at 796–805 (mishandling client funds and violating other client duties); *Maddux*, 148 S.W.3d at 38–39 (converting funds from the attorney's law firm). *In re Rose* is also inapplicable because, in that case, the attorney was convicted of unlawfully possessing a firearm under 18 U.S.C. §§ 922(g)(3), 924 (2012). The hearing panel concluded—and the parties did not dispute—that ABA Standard 5.12 was appropriate. That standard provides that suspension is the presumptive sanction for "criminal conduct which does not contain the elements [such as misrepresentation and fraud] listed in ABA Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice." ABA Standard 5.12. Thus, unlike Ms. Meehan's bank fraud conviction, the misconduct in *In re Rose* did not meet the criteria to trigger disbarment as the presumptive sanction under ABA Standard 5.11.

This Court has affirmed disbarment as a proper sanction for attorneys convicted of crimes involving dishonest conduct, fraud, deceit, or misrepresentation, as set forth in ABA Standard 5.11. *See, e.g., Threadgill v. Bd. of Prof'l Responsibility*, 573 S.W.3d 773, 778–79 (Tenn. 2019) (affirming disbarment of attorney convicted of federal tax evasion); *In re Everett Hoge Mechem*, No. M2017-00818-SC-BAR-BP (Tenn. Apr. 28, 2017) (Order of Enforcement) (disbarring attorney convicted of wire fraud); *Cowan*, 388 S.W.3d at 272 (affirming disbarment of attorney convicted of willful tax evasion). In other cases, we have affirmed a hearing panel's recommendation to suspend an attorney

---

[9] Rule 9, section 8.4 (currently, section 15.4) did not require hearing committees (now, hearing panels) to consider the ABA Standards "[i]n determining the appropriate type of discipline" until 2006. *See* Tenn. Sup. Ct. R. 9, § 8.4 (2006); *but see id.* § 8.4 (2005) (including no reference to the ABA Standards).

convicted of a felony. *See In re Cope*, 549 S.W.3d at 75–76 (imposing twenty-five month suspension after attorney's federal conviction for insider trading, but making sanction prospective); *In re Carla Ann Kent Ford*, No. M2016-01035-SC-BAR-BP (Tenn. Dec. 22, 2016) (Order of Enforcement) (imposing four-year suspension after attorney's felony theft conviction); *Lockett*, 380 S.W.3d at 30 (affirming four-year suspension after attorney pleaded guilty to felony theft). These cases underscore a hearing panel's discretion to recommend suspension or disbarment as the appropriate discipline under ABA Standard 5.11 after properly considering aggravating and mitigating factors.

In sum, the hearing panel's application of aggravating and mitigating factors and its imposition of disbarment were supported by substantial and material evidence. The hearing panel neither acted arbitrarily nor abused its discretion. *See Lockett*, 380 S.W.3d at 27 (citing *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)) ("A hearing panel does not abuse its discretion when it makes a choice among several acceptable alternatives."). Here, disbarment was an acceptable sanction for Ms. Meehan's bank fraud conviction. The application of aggravating and mitigating factors did not warrant a departure from the presumptive sanction under the ABA Standards. Ms. Meehan's disbarment is effective upon entry of this Court's disbarment order. *See* Tenn. Sup. Ct. R. 9, § 28.1.

## III.

## Conclusion

We hold that the hearing panel's decision was supported by substantial and material evidence and was neither arbitrary nor an abuse of discretion. The trial court erred by substituting its judgment for that of the hearing panel. We reverse the trial court's judgment, affirm the hearing panel's decision, and tax the costs of this appeal to Jennifer Elizabeth Meehan.

_____
SHARON G. LEE, JUSTICE

- 16 -